ELZENA MOSS et al. v. MARGARET V. ARDREY et al., Appellants.

**In Banc, July 14, 1914.**

1. **DEED BY ENTIRETY:** Wife's Separate Money: Proof Aliunde. A deed to a husband and wife, nothing more appearing, will be held to create an estate by the entirety, and the entire land on the death of either goes to the survivor. But since the Married Woman's Acts the husband cannot appropriate the wife's money without her written consent, and, in spite of the fact that the deed names him and her as the grantees, she or her heirs may show by parol proof that without her written consent he used her money in part to pay the purchase price, and if that is satisfactorily shown the deed, as to her or her heirs, will be held to be a conveyance to him and her as co-tenants, in the proportion that the money contributed by each bears to the entire purchase price.

2. ————: As Result of Husband's Wrong. But neither the husband during his life, nor his heirs after his death, can by parol testimony defeat a deed to the husband and wife and have it declared to create a cotenancy between him and her, by showing that, without her written consent, he used a part of her money to buy the land. The husband, being a wrongdoer, cannot in a court of equity obtain a change in the character of the conveyance which he has brought about in wrong of the wife, nor can his heirs after his death, any more than he or they could attack the validity of a deed which he had made in fraud of creditors. In such case equity leaves him where he placed himself, and declares the deed to him and his wife, so made at his instance, by using her money without her written consent, to create an estate by the entirety, and on his death the entire land goes to her as the survivor.

Appeal from Pike Circuit Court.—*Hon. William T. Ragland,* Judge.

REVERSED AND REMANDED.

*Schofield & Plowman* for appellants.

(1) The Married Women's statutes do not limit the right of the wife to use her separate estate as she sees fit. Macks v. Drew, 86 Mo. App. 227; Craig v. Bradley, 153 Mo. App. 593. (2) The quitclaim deed in this case to husband and wife created an estate by the entirety, and did not create an estate in common as held by the trial court. Gibson v. Zimmerman, 12 Mo. 386; Garner v. Jones, 52 Mo. 68; Beauchamp v. Shrader, 52 Mo. 72; Bains v. Bullock, 129 Mo. 117; Hall v. Stephens, 65 Mo. 676; Edmondson v. Moberly, 98 Mo. 523; Hume v. Hopkins, 140 Mo. 65; Craig v. Bradley, 153 Mo. App. 586; Wilson v. Frost, 186 Mo. 311; Frost v. Frost, 200 Mo. 482. (3) The estate by the entirety created by this deed could only be attacked in equity on the grounds of fraud, and there is no evidence of any fraud in the case. Wilson v. Frost, 200 Mo. 484; McLeod v. Venable, 163 Mo. 536; Donovan v. Griffith, 215 Mo. 149; Craig v. Bradley, 153 Mo. App. 592; Ober v. Howard, 11 Mo. 425. (4) Where the husband uses his wife's money in the purchase of land and takes the title in the name of himself and wife, there is no presumption of a resulting trust, but prima-facie it is a provision for the wife. Jones v. Elkins, 143 Mo. 651; Craig v. Bradley, 153 Mo. App. 592; Wells v. Moore, 68 Mo. App. 501; Medlin v. Morris, 243 Mo. 260; Hall v. Stephens, 65 Mo. 677. (5) The deed from William Ardrey and wife to the two small children was effective to vest title in them.

*M. L. Farres* for respondents.

(1)   The quitclaim or release deed to William G. Ardrey and Margaret V. Ardrey did not create an estate by the entirety.   Jones v. Elkins, 143 Mo. 651; McLeod v. Venable, 163 Mo. 541; Johnston v. Johnston, 173 Mo. 115; Donovan v. Griffith, 215 Mo. 149. (2)   In the absence of written authority of the wife, where the husband uses her separate money, in part in a purchase of lands and takes the title in their joint names, no estate by the entirety is created. Jones v. Elkins, 143 Mo. 651; McLeod v. Venable, 163 Mo. 536; Johnston v. Johnston, 173 Mo. 115; Donovan v. Griffith, 215 Mo. 149.

GRAVES, J.—The petition in this case is in two counts.   By the first count the plaintiff Elzena Moss seeks to set aside for fraud and undue influence a certain deed executed by her and others to her father, conveying the land in dispute.   This count, in addition, asks that the court ascertain and determine the title of the several parties in and to the lands.   The second count is an action for the partition of the land. The case is fully stated by the trial court in a finding of facts incorporated with its judgment.   Many of these findings of facts stand admitted in the briefs, but where there is dispute such dispute can be considered in the course of the opinion.   The findings *nisi* will serve well for a statement of the case.   Such findings are as follows:

"The court finds, under count number one, that Noah Turley died intestate about the year 1859, leaving surviving him his widow, Christiana Turley, and their only child, Charity C. Turley, and seized in fee of the following described lands, to-wit [lands in controversy described]; that at the death of said Noah Turley all of said lands descended to said Charity Turley, subject to the dower right therein of her

mother, the said widow of said Noah Turley, deceased; that thereafter there was duly assigned and set out to said widow, Christiana Turley, as and for her dower in said lands, sixty-three acres thereof; that after the death of Noah Turley his said widow married one Benjamin Milam; that in the year 1870 or 1871, said Charity C. Turley married one William C. Ardrey; that thereafter in the year 1873 the said Christiana Milam and Benjamin R. Milam, her husband, by their general warranty deed of date March 20, 1873, and duly acknowledged by the grantors in said deed and duly filed for record, June 2, 1891, in the office of the recorder of deeds in and for Pike county, Missouri, granted and conveyed to the said Charity C. Ardrey all of said sixty-three-acre tract; that by reason of such conveyance the said dower interest in said sixty-three-acre tract and the said remainder interest therein of the said Charity C. Ardrey merged, and she became and was the owner in fee of both the said sixty-three-acre tract and the seventy-three-acre tract, constituting together said 136-acre tract; there were born to said William G. Ardrey and Charity C. Ardrey his wife, four children, James T. Ardrey, Evelene Ardrey, Elzena Ardrey and William S. Ardrey; that Sophia Ardrey, a defendant herein, is the wife of said James T. Ardrey; that Nora Ardrey, a defendant here, is the wife of William S. Ardrey; that said Evelena Ardrey married George Burch, a defendant herein; that said Elzena Ardrey married one Charles Liter, from whom on the ——— day of May, 1907, she was lawfully divorced; that thereafter and prior to the death of her father, the said Elzena Liter married and is now the wife of Joseph Moss, her co-plaintiff herein; that in the year 1884, said Charity C. Ardrey died intestate, leaving surviving her widower, the said William G. Ardrey, and the said four children born to the said William G. Ardrey and his wife Charity C. as aforesaid; that

after the death of their mother, the said children by means not clearly appearing in the evidence, sought to dispossess their father of said lands, which by reason of the death of their mother had descended to said four children as tenants in common subject to their father's curtesy estate therein. Failing in their attempt to dispossess the said William G. Ardrey, the said heirs sought either to buy the interest of their father in said lands or sell their interest therein to him. Several propositions tending to that result were made by the respective parties; and thereafter on the 27th day of September, 1901, by their quitclaim deed of that date, the said James T. Ardrey and his wife Sophia, Evelena Burch and George Burch her husband, Elzena Liter and her then husband, Charles Liter, William S. Ardrey, and his said wife Nora, remised, released and quitclaimed to the said William G. Ardrey and his then wife, Margaret V. Ardrey, for the expressed consideration in said deed of the sum of $1300, all of said 136-acre tract; that of said consideration the sum of $325 was in fact paid to each of said four heirs of Charity C. Ardrey, deceased; that after the death of Charity C. Ardrey and prior to the execution of said mentioned deed, said William G. Ardrey married Margaret V., who as the surviving widow of said William G., is one of the defendants herein; that on the 31st day of December, 1901, said quitclaim deed was duly acknowledged by all of the grantors therein and was duly recorded in the office of the recorder of deeds; that at the date of the execution by them of said quitclaim deed, each of the four children of William G. Ardrey was of age, married and not living with their father, and each of them had a separate home and domestic establishment; that they sold their said interest in said lands with full knowledge of the interest their father had in the same, having previously consulted a lawyer and by him been informed as to the nature

and extent of such interest; that in the matter of the execution of said deed, the said William G. Ardrey did not exercise any influence over his children, nor were their interests in said lands sacrificed, nor did they suffer any loss by reason of such conveyance. On the contrary, they received a fair and full consideration for the interest they conveyed; their father then being fifty-six years of age, and the value of the courtesy estate being in excess of the value of the remainder interest; and said lands were at the date of said quitclaim deed not worth over ten dollars per acre; the said transaction was characterized by fairness and was without any fraud or semblance thereof on the part of the said William G. Ardrey.

"The court further finds that of said consideration paid to said heirs for said lands, six-thirteenths thereof, to-wit, the sum $600, the separate money and means of said Margaret V. Ardrey, was by her said husband, he having the same in possession at the time, paid to said heirs as part of the purchase price and not with the written consent of the said Margaret V. Ardrey.

"The fact of such payment was testified to by the defendant, Margaret V. Ardrey, as a witness in the case, testifying therein in behalf of plaintiffs and was conceded by counsel for defendants in their briefs furnished the court. The fact of such payment prevented said quitclaim deed from creating an estate by the entirety in said William G. Ardrey and his wife. If after such conveyance Margaret V. Ardrey had died before her husband, it clearly appears that neither he nor his heirs after him could be heard to claim that he took the entire estate as surviving tenant by the entirety. If it were such estate as to one, it was as to the other. It would be an estate by the entirety as to both, or as to neither. The court finds and declares as a proposition of law that under and by virtue of said quitclaim deed, the grantees

therein took title in and to said lands as tenants in
common; the said William G. Ardrey thereby becom-
ing the owner in fee of an undivided seven-thirteenths
interest in said 136-acre tract; and his wife Margaret
V. Ardrey thereby becoming the owner of an undi-
vided six-thirteenths interest in said 136-acre tract,
subject to the said courtesy estate therein of the said
William G. Ardrey.''

The court further finds that there were born to
the said William G. Ardrey and his wife Margaret V.,
two children, defendants herein, viz., Pansy L.
Ardrey and Clifton Ardrey, the latter of whom is a
minor, duly served with process herein and repre-
sented herein by his duly appointed guardian *ad litem*
herein, the said Margaret V. Ardrey; that on the day
of ——, 1901, the said William G. Ardrey and his
wife signed and on the —— day of ——, 1901,
acknowledged a certain quitclaim deed purporting to
convey to their said two children, Pansy L. and Clifton
Ardrey, the above described 136 acres; that said last-
mentioned deed, after the signing and acknowledg-
ment of the same as aforesaid, was by the grantors
named therein, put away and kept at their home,
among their papers, and was continuously in their
possession during the said William G.'s life, and
thereafter remaining in the possession of said Mar-
garet V. Ardrey until January 4, 1910, when she duly
filed the same for record in the office of said recorder
of deeds, and with the intent thereby to pass the title
to the lands in controversy to said Pansy L. and Clifton
Ardrey; that there was never any delivery of said
last mentioned deed by William G. Ardrey; and there
was never any delivery of the same by Margaret V.
Ardrey until the filing of the same by her for record
as aforesaid, and no title of the said William G. Ard-
rey in or to said lands passed or was conveyed by
said deed to any one. That said William G. Ardrey
did not reside on said lands at the time of his death

and did not have any homestead therein and there is no homestead interest or claim involved in this action. That upon the death of William G. Ardrey, which occurred the 19th day of December, 1909, his said undivided seven-thirteenths interest in said 136-acre tract passed to and vested in his said children as tenants in common, subject to the dower estate therein of the said widow Margaret V. Ardrey, which said dower estate became vested in her upon the death of her husband. Upon the delivery of said quitclaim deed from Margaret V. Ardrey to her said two children as aforesaid, all of her interest in said lands, including said dower interest, passed to and vested in her two children.

"Under the second count of the petition the court finds the facts as above found under count number one of said petition, and the court further finds that the plaintiff Elzena Moss is entitled to partition of the lands in controversy; that from the nature and amount of the property sought to be divided and the number of owners it is apparent to the court that the assignment of dower and a partition of said lands in kind cannot be made without great prejudice to the owners.

"It is therefore ordered, adjudged and decreed by the court that the ownership of said 136-acre tract is as follows, to-wit, the defendant Pansy L. Ardrey and Clifton Ardrey are each the owners in fee simple of an undivided three-thirteenths interest in said 136 acres.

"That the defendants Pansy L. Ardrey and Clifton Ardrey are the owners of the said dower estate in the undivided seven-thirteenths interest in said lands, held by her said husband, and acquired by him from the children of his first wife as aforesaid, said dower interest and estate being an undivided one-third interest in said last-mentioned seven-thirteenths interest, for and during the life of the said Margaret V. Ardrey; that subject to said dower interest, the

plaintiff Elzena Moss, and the defendants Pansy L. Ardrey, Clifton Ardrey, William S. Ardrey, James T. Ardrey, and Eveline Burch are, each the owner of an undivided one-sixth interest in said last-mentioned undivided seven-thirteenths interest in said lands.

"It is therefore ordered by the court that at and during the regular February term, 1911, of the circuit court of Pike county, Missouri, said above described 136-acre tract be by the then sheriff of said county sold at public sale to the highest bidder, for cash in hand, after giving notice of such sale, as required by law, and that at the regular February term, 1911, of this court said sheriff make due report to said circuit court of his proceedings under this order."

I. The court found against the plaintiff on her theory of there being fraud or undue influence in the making of the quitclaim deed by the plaintiff and the other three children described in the first count of the petition, and this question is not now urged here. It could not well be here under any circumstances, because the evidence in the record does not warrant such a contention. The finding of the trial court was right under the facts, and that leaves this deed and the character of the estate conveyed by it open for discussion, and that question we take next.

**Fraudulent Conveyance.**

II. The trial court found that in the purchase of this land the husband used $600 of the wife's money. This finding is borne out by the record, and we shall not disturb it. In fact the evidence tends to show that one-half of the money used in the transaction was the wife's money. The difference would be that between $600 and $650, and we shall not disturb the finding. Proceeding then upon the theory that the husband used $600 of the wife's money in procuring this quitclaim

**Estate by Entirety.**

deed, what construction should be given to this deed? Appellants claim that it created an estate by the entirety, respondents *contra*. Taking the deed alone, it undoubtedly creates an estate by the entirety. Respondent's contend that the facts considered show a different character of instrument. This is one of the vital questions in the case.

If there was nothing in this record but the naked quitclaim deed to the husband and wife, we would be obliged to say that an estate by the entirety had been created, and that upon the death of the husband the whole estate vested in the wife, the survivor. [Gibson v. Zimmerman, 12 Mo. 386; Garner v. Jones, 52 Mo. 68; Bains v. Bullock, 129 Mo. 117; Hume v. Hopkins, 140 Mo. 65; Holmes v. Kansas City, 209 Mo. 523.] But in this case we have more than the mere naked deed, from which to determine the character of the estate conveyed thereby. We have here a case where the husband, without the written assent of the wife, invested her separate money in the lands in question, and took the title in the name of the two. In such case when such a deed is attacked in equity by the wife or her heirs the husband is declared to hold that portion of the land paid for out of the wife's money in trust for her and her heirs, in case of her death, and holds the other portion for himself and his heirs, subject to all marital rights. Such seems to be the well recognized doctrine in this State. In the early case of Garner v. Jones, 52 Mo. l. c. 72, it is said:

"It may be conceded that if a husband invests the separate funds of his wife in real estate and takes a deed to them jointly, a court of equity would protect her in the enjoyment of the property and declare a trust in her favor. But no such point arises in this case. This is a plain deed made to husband and wife as an advancement to her without any words securing it to her sole and separate use. Under this view, at

her death the estate remained in the husband as an entirety and her heir took nothing by descent.''

The Garner case was one where the character of the title was dependent solely upon the deed, and as indicated in the opinion, there was no proof *aliunde* tending to show a trust estate. And such is the rule now, as we have above said. If we have in evidence only a naked deed to husband and wife, we should declare an estate by the entirety to have been created. But on the other hand the rule is just as clear, that by proper proof such a conveyance may be shown to create a trust estate in proportion to the amounts invested by the two parties. In Jones v. Elkins, 143 Mo. l. c. 651, BRACE, P. J., said:

''It would seem to follow as a necessary sequence that if the husband invests his wife's statutory separate money in land, without her written assent, and takes the legal title jointly to himself and his wife, the title which he takes to himself will be held by him upon the same trust (Garner v. Jones, 52 Mo. 68; Modrell v. Riddle, 82 Mo. 31); and where he purchases land and pays for it with the separate money of his wife in part, without her written assent authorizing him so to do, and in part with his own money, and takes the legal title jointly to himself and wife, the title which he takes to himself will be held by him upon the same trust *pro tanto* as the amount the separate money of the wife that was used by him in procuring the title bears to the whole of the purchase money. [Bowen v. McKean, 82 Mo. 594.]''

Later in McLeod v. Venable, 163 Mo. l. c. 545, MARSHALL, J., said:

''In fact, it is more reasonable to so construe her actions. She is charged with knowledge of the law, and hence is as conclusively presumed to have known the rule announced in Jones v. Elkins, 143 Mo. 647, as she is to have known that laid down in Garner v. Jones, 52 Mo. 68. Indeed it must be held that she

knew that under the facts of this case, the $1200 was her separate property and accrued to her after the passage of the Act of 1875, and that it was invested in this land, in their joint names, by her husband, without her written consent, and hence under the rule announced in Jones v. Elkins, as well as under the exception to the common-law rule announced distinctly in Garner v. Jones, she had a trust estate in the land in the proportion of $1200 to $3712 which a court of equity would protect, and therefore there was no necessity for a severance of her interests from her husband's. The trial court took this view and decreed her interest in that way and then gave her husband one-half of her interest, the whole of his own, and divided the other half of her interest among her collateral heirs."

In Johnston v. Johnston, 173 Mo. l. c. 118, the same judge said:

"In Missouri, since the passage of the Married Woman's Acts, it has been uniformly held that if a husband invests any of his wife's separate money, acquired by her after said acts took effect and in the manner therein specified, together with money of his own in real estate in their joint names, without her express written consent so to do, it will not create an estate by the entirety, but the wife will, by a court of equity, be decreed a resulting trust in the land to the extent represented by her money.

"In Winn v. Riley, 151 Mo. 61, it was held that if the husband takes his wife's money, arising as aforesaid, and uses it in his business, his wife could treat him as her debtor or as her trustee as she chooses.

"In all these later cases, except Winn v. Riley, the investment of the wife's separate money, with other money of the husband, was in real estate, while here it was in personal property. But this is an immaterial difference. For at common law there was

no difference between the right of survivorship as to real property and as to personal chattels. And as hereinbefore shown, section 4600, Revised Statutes 1899, excepts grants to husband and wife, and leaves the rule as to them as it was at common law, so far as real estate is concerned, and the Married Woman's Acts have abolished the common-law unity of the husband and wife and placed married women, as to their separate personal, as well as their real, property, on the same footing towards their husbands, as any other persons occupy towards each other.

"The result is that not only in the other jurisdictions referred to, and according to the text-writers quoted from, but also by the more recent decisions of this court, an estate by the entirety does not arise, nor does the right of survivorship exist, as to real estate where the land is purchased by the husband without the wife's express consent, partly with the money of the husband, but the wife will be decreed a resulting trust in the land, by a court of equity in the proportion that her money bears to the total purchase price of the land."

To the same effect is Donovan v. Griffith, 215 Mo. l. c. 166, whereat Fox, J., said:

"This leads us to the consideration of the complaints of the defendant-appellant, James R. Griffith. Learned counsel for defendant insist that the conveyance of the Pritchett forty acre tract to James R. Griffith and Leona Griffith, his wife, created an estate by entirety, and that upon the death of the wife the defendant became the absolute owner in fee of said forty acres by right of survivorship.

"It must be conceded that, if nothing else was disclosed by the record in this cause other than the conveyance itself, the contention of counsel for the defendant would be unanswerable. The authorities are all one way on that proposition; but the suit involves a contest as to the nature and character of the

estate created by this conveyance, and all the facts were developed concerning the execution and delivery of the deed. That the purchase money for this land was partly furnished by the defendant, James R. Griffith, and partly by money constituting the separate estate of the wife, the testimony shows beyond dispute. We have read in detail the testimony developed upon the trial and it fully supports the finding of the court concerning the amount of money belonging to the husband and wife which was applied to the payment for the purchase of the Pritchett forty, as well as the interests of the parties in said lands.

"Upon the facts disclosed by the record applicable to this case, it comes directly within the rules of law announced in McLeod v. Venable, and Jones v. Elkins, supra, and the doctrine as announced in those cases is a full and complete answer to the contention of the defendant that the deed to Griffith and wife constituted an estate by entirety.

"It was expressly ruled in Jones v. Elkins, supra, that where the husband purchases land and pays for it with the separate money of his wife in part, without her written assent authorizing him so to do, and in part with his own money, and takes the legal title jointly to himself and wife, a court of equity will protect the wife in the enjoyment of her interest in the property and declare a trust in her favor.

"In McLeod v. Venable, supra, the case of Jones v. Elkins was unqualifiedly approved, and it was held that under the rule announced in the Elkins case, as well as under the exceptions to the common-law rule announced distinctly in Garner v. Jones, 52 Mo. 68, and under the facts in that case, the wife had a trust estate in the land in proportion to the amount contributed by her to the full amount of the purchase money, which a court of equity would protect. An examination of those cases will demonstrate that the

facts upon which the rules of law are predicated are nearly identical with the facts in the case at bar.

"Counsel for defendant manifestly rely upon the case of Garner v. Jones, supra. That case, it is true, very clearly and correctly announced the rules of law applicable to estates by the entirety, and in a clear, painstaking manner sets forth the reasons upon which the doctrines of estates by the entirety are predicated. With the doctrine announced upon that subject in Garner v. Jones we have no fault to find or criticism to suggest. It is entirely in harmony with the uniform unbroken line of decisions by this court, as well as most of the courts of our sister States where the subject has been in judgment before them. However, it is apparent that defendant overlooks what was said in that case, which is strikingly applicable to the case at bar. The learned judge, after discussing the law applicable to estates by the entirety, in conclusion announced this rule in the following language: 'It may be conceded that if a husband invests the separate funds of his wife in real estate and takes a deed to them jointly, a court of equity would protect her in the enjoyment of the property and declare a trust in her favor. But no such point arises in this case.'

"The cases to which I have directed attention treating of this proposition cite numerous authorities in support of the conclusions therein reached, and it is sufficient to say that if the doctrines as announced in the cases applicable to this proposition are longer to be followed, then there can be but one conclusion reached upon this question, and that is that Leona Griffith, the wife of the defendant-appellant, had an interest in the lands involved in this proceeding, which a court of equity would protect, and she being dead, that the plaintiffs were entitled to the interests as designated in the written finding of the court, and the court was warranted, as was done in the case of Mc-

Leod v. Venable, supra, to decree partition and order the land to be sold and the proceeds distributed in accordance with the interests of the parties."

Upon the facts found in this case and the law as declared in the cases quoted from above, it is clear that, if the wife was attacking this deed in equity, or if in the event of her death her heirs were so attacking it, there would be no question that the chancellor should say that the husband held in trust for the wife, such portion of the estate as her money paid for in the first instance. In this case it would be six-thirteenths of the whole tract. But does this rule apply here? That question we take next.

III. We have changed our views from those expressed in the Division. We were then impressed with the view that the trial court was right when it said:

"The fact of such payment was testified to by the defendant, Margaret V. Ardrey as a witness in the case, testifying therein in behalf of plaintiffs and was conceded by counsel for defendants in their briefs furnished the court. The fact of such payment

Deed to Husband and Wife: Husband's Wrong.

prevented said quitclaim deed from creating an estate by the entirety in said William G. Ardrey and his wife. If after such conveyance Margaret V. Ardrey had died before her husband, it clearly appears that neither he nor his heirs after him could be heard to claim that he took the entire estate as surviving tenant by the entirety. If it were such estate as to one, it was to the other. It would be an estate by the entirety as to both, or as to neither. The court finds and declares as a proposition of law that under and by virtue of said quitclaim deed, the grantees therein took title in and to said lands as tenants in common; the said William G. Ardrey thereby becoming the owner in fee of an undivided seven-thirteenths

interest in said 136-acre tract; and his wife Margaret V. Ardrey thereby becoming the owner of an undivided six-thirteenths interest in said 136-acre tract, subject to the said courtesy estate therein of the said William G. Ardrey.''

We were impressed with the idea, that if the facts of the transaction prevented it from being an estate by the entirety in the interest of the wife or her heirs, it could not be an estate by the entirety so far as to bind the husband and his heirs. We believe now that we were wrong in the view then expressed, and that the judgment *nisi* is wrong. It will be noted that the cases cited and quoted from are cases where the deed creating the estate by the entirety is being attacked in equity by the wife or her heirs. We find no case where the husband, who has done the legal wrong, has been allowed in equity to have the character of the estate as created by the deed changed by making proof of his wrong. Nor have we found a case where his heirs were permitted to change the character of the estate fixed by the terms of the deed by making similar proof. If the husband takes the funds of the wife and invests it in lands and takes the title in his own name, a court of equity will declare a resulting trust, because not to so declare it would be to work a fraud upon the wife, and the husband has been the author of such fraud. So, too, it is upon this principle, that if the husband takes his wife's money, and along with some of his own, buys land taking the title in the name of the two, thus creating an estate by the entirety, a court of equity will at the instance of the wife seize upon the situation, and as to her declare that as to such proportionate part of the land as was paid for by the wife's money, a trust arises in her favor, and she is the absolute owner of such interest. But these are cases where the wife or her heirs attack the deed. And it must be remembered further that the principal invoked is that it would be a legal

fraud upon the wife to permit the transaction to stand. But does it follow from this that the husband, who is the wrong-doer, can appeal to equity, or in the event of his death, can his heirs, who stand in his shoes, invoke the aid of such court? This is the vital question in this case. We do not believe that the husband could in equity change the character of a deed which had been made at his instance and in wrong of the wife, any more than he could attack the validity of a deed which he might have made in fraud of his creditors. His wrong-doing in either case prevents him from getting relief in equity. What would prevent him would prevent his heirs, for they stand in his shoes. That it is upon the ground of fraud that the wife and her heirs can attack a deed creating an estate by the entirety is made plain by VALLIANT, J., in Frost v. Frost, 200 Mo. l. c. 483. For these reasons we do not believe the heirs of the husband can attack this deed, and if not, then the wife took the whole estate upon the death of the husband. The judgment *nisi* did not take this view of the case. The plaintiffs were not entitled to question the character of the estate created by this deed. They could not reap a benefit from the wrongful act of the husband. The deed should have been held to have created an estate by the entirety. With this question out of the case there is nothing left in the other contentions. It follows that the judgment should be reversed and cause remanded to be proceeded with in accordance with the views herein expressed. It is so ordered. All concur.