JAMES W. EATON and LIZZIE HUFFMAN, Appellants, v. MARY DALE CURTIS.—4 S. W. (2d) 819.

Division Two, March 24, 1928.

*M. T. January* for appellants.

*Homer M. Poage* for respondent.

DAVIS, C.—The petition comprises two counts: the first count is based on Sections 1311 and 1973, Revised Statutes 1919, involving the Thirty-Year Statute of Limitations, and praying the vesting of title in plaintiffs as to certain land; the second is an action to ascertain and determine title. Both counts involve lots 1 and 2 of the Northeast Quarter of Section 2, Township 34, Range 31, in Vernon County. The venue was twice changed, first to Bates County, and then to Cass County. The cause was tried by the court in the last-named county, a jury being waived. The trial court found the issues in favor of defendant, the plaintiffs appealing from the judgment againt them.

We summarize the petition as follows. The first count avers that defendant, a non-resident, claims an adverse interest in the land; that the title emanated from the Government in 1857 and neither defendant nor any person under whom she claims has been in possession of the land for more than thirty years, nor have they paid any taxes nor brought an action for recovery within one year from

the thirty-year period. It is alleged that the action was brought under Sections 1311 and 1973, Revised Statutes 1919. The second count prays the court to ascertain and determine title as between plaintiffs and defendant in accordance with Section 1970, Revised Statutes 1919.

The answer admits that defendant claims the land and then generally denies. Defendant further avers she is the owner of the land in fee simple and plaintiffs have no interest therein; that about October 15, 1881, James A. Eaton, the father of defendant, purchased the land from J. W. Lillard and wife for the sum of $1920, receiving a warranty deed therefor, recorded October 31, 1881, in Book 19 at page 591 of the deed records of said county; that James A. Eaton placed his brother, George Henry Eaton, father of plaintiffs, in possion of the land under an agreement or promise to hold and use said land as his tenant or trustee, and for such use and possession thereof he was to keep taxes against the same paid; that George Henry Eaton occupied the land from then until his death in 1912 as the tenant and trustee for James A. Eaton without claiming it; that plaintiffs, the only heirs of George Henry Eaton, after his death continued to live on the land and in continuance of the agreement to pay taxes without having or claiming title; that in May, 1922, James A. Eaton died intestate, leaving defendant as his only heir at law; that plaintiffs have never held the land adversely to James A. Eaton or to defendant, and are estopped to claim title by limitation or otherwise. Defendant prays the court to determine all interest as to plaintiffs and defendant and for relief, whether legal or equitable, and for all proper relief in the premises.

Plaintiffs' reply avers that the father of James A. Eaton and George Henry Eaton, who were half brothers, purchased the land on October 15, 1881, for the benefit of George Henry Eaton, placing him in possession, but for reasons of his own put the title to the land in James A. Eaton; that George Henry Eaton continuously from 1881 to his death occupied the land, claiming it as his own, and neither defendant nor anyone under whom she claims has been in possession or paid taxes during that period; that plaintiffs admit that James A. Eaton is dead and that defendant is his only heir. Further replying, plaintiffs aver that George Henry Eaton went into possession of the land in controversy in 1881, erected improvements and occupied it under claim of title continuously to his death. Further replying, plaintiffs say that since the death of their father, George Henry Eaton, on August 24, 1912, to this date they have been in continuous, uninterrupted, adverse possession of said land under a claim of ownership.

During the trial the parties admitted that on or about October 15, 1881, James A. Eaton purchased the land for the sum of $1920, re-

ceiving a warranty deed therefor recorded October 31, 1881, in Book 19 at page 591 of the records of Vernon County. It was also admitted that James A. Eaton died in May, 1922, intestate, leaving defendant as his only heir at law, his estate in Kentucky being fully administered. It was further admitted that plaintiffs are the only heirs at law of George Henry Eaton, and that the title to the land emanated from the Government of the United States in 1859. Defendant admitted that from March, 1882, until August 24, 1912, George Henry Eaton lived on the place, cultivated it, farmed it, paid taxes and, as far as she knew, appropriated the usufruct therefrom.

Plaintiffs' evidence warrants the finding that George Henry Eaton, hereinafter called Henry, died August 24, 1912, and that from March, 1882, until his death he lived on the land with his family. Henry Eaton broke the land, fenced it, built a house and barn on it and dug a well. After his father's death, plaintiff James W. Eaton continued to live on the land, paying the taxes and insurance on the buildings. The only time James A. Eaton ever visited Vernon County was in 1881. From then until the time of his death no visits occurred or correspondence took place between the brothers. Plaintiff Eaton did not know until after his father's death that the title to the land was vested in James A. Eaton. While Henry Eaton and said plaintiff lived on the land from 1881 until the trial, said plaintiff never knew of any other person making a claim to the land until a Mr. Curtis, two or three years before the trial, claimed it in behalf of James A. Eaton.

Defendant's evidence warrants the finding that in December, 1920, a Mr. Curtis, an attorney of Louisville, Kentucky, representing James A. Eaton, visited Vernon County. There he advised with Dwight Flynn of Nevada. The two went to the home of plaintiff Eaton on the land in controversy and there interviewed him. Curtis told plaintiff that his uncle James A. Eaton sent him from Kentucky to look into matters and wanted him to sign a lease; that his uncle had no disposition to dispossess him or collect any rents, but he did believe he should have a lease to the farm. Plaintiff Eaton agreed to sign a lease or any other paper. He said, "I know that I don't own the land and I cannot buy it." However, he discussed the buying of eighty acres, but concluded he could not buy it and was willing to sign a lease. Witness prepared blank leases before leaving Nevada and upon showing them to plaintiff Eaton, changes in the lease were suggested and made. When about to sign the lease, some lady called to him from the house, saying, "Will, don't sign those papers. We don't know who that man is and you can communicate with Uncle Jim in Kentucky and find out what he wants and we will do what he wants to do and sign it if he says sign."

Dwight Flynn testified that he visited plaintiff Eaton's residence with Mr. Curtis and plaintiff Eaton said, among other things, "Yes, I know the place belongs to Uncle Jim." Some lady called to Eaton from the house, however, advising him to refuse to sign the lease.

W. J. Mays, seventy-two years of age, stated that he lived about three-quarters of a mile from the farm. He knew plaintiffs and their father. During Henry Eaton's lifetime he had a conversation with him. Going to the farm to get some seed corn and having heard that the farm belonged to the brother of Henry Eaton, the witness asked him if it belonged to his brother in Kentucky, that he had heard it so rumored in the neighborhood, and Henry Eaton said it did. This conversation happened twenty or twenty-five years before the trial. On cross-examination witness stated that Henry Eaton had just erected a barn. He asked Henry his reason for erecting the barn, and he said he had the right to erect what he needed; if he kept the taxes paid, he could put up such improvements on the farm; that he had it for his lifetime or as long as he wanted it.

Witness Eugene Moore stated that sixteen or seventeen years before the trial Henry Eaton said to him that he did not own the land, that it belonged to his brother.

Witness Eisenhower testified that in 1907 he purchased a hedge on the land from Henry Eaton, and upon asking him why he wanted to sell the hedge, he replied, "This is not my place. It belongs to my brother in Kentucky."

Witness William M. Moore testified that a few years before Henry Eaton's death he stated to him that the place belonged to his brother back East.

Some neighbors living near plaintiff Eaton stated that they had known the land in controversy for many years and that it was the general understanding in the neighborhood and had been for many years, that the land was owned by a brother of Henry Eaton who lived in Kentucky.

Lizzie Eaton, a sister of James A. and Henry Eaton, gave her deposition, which is in evidence. She stated that she had carried on a correspondence with the plaintiffs, who were her nephew and niece, although she had never seen them. Several letters were attached to the deposition, which were signed, "Your niece and nephew, Nora and Will," or "Nora and Billy Eaton." Nora was the wife of plaintiff Eaton. Plaintiff Eaton testified that the letters were in her handwriting.

A letter, dated "Milo, Mo., Sept. 3-12," addressed to "Mr. James Eaton, Dear Uncle," and signed "Your niece and nephew Nora and Billie Eaton," after setting forth that George Henry Eaton had died on August 24th, recites: "Uncle Jim, Billie wants to know if you would be willing to swap his part of the land back there for the

north 80 of this place back here. . . . Billie says for you to make some kind of proposition and we will try and straighten up some way.'' The envelope was indorsed, ''After 5 days return to J. W. Eaton.''

An envelope addressed to ''Miss Lizzie Eaton, Mortonsville, Ky.,'' postmarked ''Milo, Mo., Jan. 14, 8 P. M. 1913,'' containing a letter dated and headed ''Milo, Mo., Jan. 13, 1913, Dear Aunt and Uncle,'' signed ''Your nephew and niece Nora and Will,'' recites: ''Will says tell you that he will give you $1500 for the eighty the house is on, that will put both 80's on the road and will make a good place to build on the other 80. Of course we are making Uncle Jimmie this proposition and hope he will care to do this.''

In a letter dated December 20, 1920, addressed ''Dear Uncle'' and signed ''James William Eaton,'' there is the following passage: ''In regard to the lease Will didn't sign it, did you authorize Mr. Curtis to do so. Will says he wants to do what is right, but didn't feel like signing lease. Mr. Curtis seemed to think we ought to have all our insurance papers made out to you. We have stock buildings and all insured, also keep taxes paid in full. Will says tell you he would like to do business with you, instead Mr. Curtis.''

Defendant's evidence further tends to show that plaintiff Lizzie Huffman never lived on or occupied the land after her father's death, having married and moved to another state long prior thereto.

In rebuttal plaintiff Will Eaton stated that his wife wrote to Uncle Jim (James A. Eaton) for him and that the letter dated January 13, 1913, is in his wife's handwriting, and the one dated September 3, 1912, he wouldn't swear to, but it may be.

The court made the following finding of fact: ''In this cause the court finds the issues for the defendant on both counts and the court specifically finds that there was no adverse possession on plaintiffs' side before December, 1920, and also finds that George Henry Eaton never entered into possession of the land in controversy, claiming to be the owner thereof and at no time claimed to be such owner.''

I. We think we need not determine whether this is an action at law or a suit in equity. If it is an action at law, the record contains plenary facts to sustain the judgment of the trial court. [Craig v. Rhodes, 298 S. W. 756.] If it is a suit in equity, the proof preponderates so strongly in favor of defendant that we have no hesitancy in concluding that the court below was right in its findings.

The record indisputably shows that the legal title to the land became vested in James A. Eaton on or about October 15, 1881. No deed or other instrument appears to show a conveyance by him to anyone, or a written declaration of any kind as to the land. Plaintiffs, by their admission that James A. Eaton purchased the land on or about October 15, 1881, for the sum of $1920, receiving a war-

ranty deed therefor, duly recorded later, subvert the averment in their reply that the father of James A. and Henry Eaton purchased the land in controversy for Henry Eaton, taking title in the name of James A. Eaton. Moreover, plaintiffs' proof is wholly lacking as to such transaction. We then have a situation in which the legal and record title to the land was continuously from 1881 to his death in 1922 in James A. Eaton, and thereafter in defendant by descent, without evidence that James A. Eaton in any wise or manner or for any purpose held the legal title for Henry Eaton's benefit beyond a life estate in him. However, we regard the evidence as showing nothing further than the purchase of the land by James A. Eaton, thereafter suffering and permitting his brother to occupy the land at will, the brother paying the taxes on the land and appropriating the usufruct therefrom.

II. Plaintiffs, to sustain their title and right to possession, rely upon what is called the Thirty-Year Statute of Limitations, Section 1311, Revised Statutes 1919. It is evident, however, that the probative force of the evidence does not sustain the plaintiffs' contention. The weight of the evidence favors the finding that the possession of Henry Eaton began by virtue of a permission or license from James A. Eaton and it follows that such possession is not adverse to the owner and cannot ripen into title, no matter how long continued or however exclusive the possession of the occupant may be. Notwithstanding that defendant admitted that from March, 1882, until his death in 1912, Henry Eaton lived on the place, cultivated it, farmed it, paid taxes and appropriated the usufruct therefrom, such occupancy and use is not inconsistent with the initial permission or license from James A. Eaton to Henry Eaton, and unless we could say that Henry Eaton denied ownership in James A. Eaton thereafter, notifying him by word or act of such denial, his possession could not be held to be adverse to the true owner under whom he holds. When we consider defendant's evidence that Henry Eaton stated to a number of witnesses that the land belonged to his brother in Kentucky and to one witness that as long as he kept the taxes paid, he could put improvements on the land, that he had it for his lifetime or as long as he wanted it, the character of Henry Eaton's occupancy is denoted and we are led to the positive conclusion that his possession was not adverse. The possession of Henry Eaton under such circumstances is considered the possession of him upon whose pleasure it continues. [Lumber Co. v. Craig, 248 Mo. 319, 154 S. W. 73; 2 C. J. 131.] We rule under these circumstances that the Thirty-Year Statute of Limitations was not apposite.

III. We have no hesitancy in reaching the decision that plaintiffs, after the death of their father, Henry Eaton, never held adversely. The decisions and textbooks are unanimous in holding that possession to be adverse must be actual, visible, exclusive, hostile and continued during the time necessary to create a bar under the limitation statutes. Whenever any of these elements is lacking, no title by adverse possession can ripen. We are unable to find a hostile claim in the record on the part of plaintiffs. While it was possible for plaintiff Eaton, under the circumstances of this case, to hold possession as to a half interest for his sister as they claim, yet her rights were so linked with his that, if his claim fails, so must hers, as she never had actual possession except through him. A review of the evidence warrants the finding that his possession was not hostile. The letters written by plaintiff, or by his wife for him at his suggestion, to his uncle and aunt, dated September 3, 1912, January 13, 1913, and December 20, 1920, show conclusively that the possession of plaintiff Eaton was not hostile to James A. Eaton. It is unnecessary to set forth the contents of the letters here, as their purport may be found in the statement of facts. Therefore the plaintiffs failed to acquire title under the ten-year limitation statute.

IV. The trial court called plaintiff Lizzie Huffman to the stand and examined her, refusing, as they contend, to permit plaintiffs to examine her relative to the whole case, of which they complain. Plaintiffs' objection on the trial was: "The plaintiffs move the court to strike out all the testimony of this witness unless the court will permit the plaintiff to examine her upon the whole case." This objection was too indefinite to permit us to intelligently rule upon the assignment of error presented. While it may be that an offer of proof is not a prerequisite to a consideration of alleged error in refusing to permit a witness to answer a question on cross-examination, yet the proper and competent method of raising the question is to ask a witness a specific question and save an exception if an objection to it is sustained. Therefore, there is nothing before us as to this assignment to review.

V. Plaintiffs again contend that it was error to deny the same right as to plaintiff J. W. Eaton, a witness for plaintiffs. Plaintiffs have not pointed in their assignment of errors or brief to specific instances of the exclusion of evidence of which they complain. Defendant all through the examination of the plaintiff objected to the competency of plaintiff, because the other party to the cause of action or contract was dead. Therefore she did not waive it. The trial court, however, over the objec-

tion and exception of defendant, permitted the plaintiff to testify to a number of things, such as the duration of the occupancy of the land by plaintiffs and their father, and other matters unrelated to conversations had by plaintiff or his father with James A. Eaton, which conversations the court excluded. A number of objections to questions put by plaintiffs' counsel to the witness were made by defendant and sustained by the court, with respect to all of which, save one, plaintiffs made no offer of proof. Consequently, without an offer of proof on the part of plaintiffs on the sustention of an objection to a question put by them to their witness, we may not consider an alleged assignment of error.

VI. The following occurred while plaintiff J. W. Eaton, witness for plaintiffs, was on the stand.

"Q. Then I will ask the witness to state whether or not he heard any conversation between James A. Eaton and George Henry Eaton in regard to the farm in controversy.

"Mr. Poage: Objected to for the same reasons.

"The Court: Sustained.

"To which ruling of the court the plaintiffs then and there excepted and still except.

"Mr. January: We offer to prove by this witness that James A. Eaton stated to Henry Eaton that he was buying this farm for his benefit.

"Mr. Poage: That is objected to for the same reasons.

"The Court: Sustained.

"To which ruling of the court plaintiffs then and there duly excepted and still except."

The above was the only offer of proof made by plaintiffs. Both James A. and Henry Eaton were dead. The question and offer of proof related to a conversation with a dead man. Plaintiffs were claiming title under and through their father's possession of the land, as heirs, by virtue of title claimed under the thirty-year limitation statute, offering a conversation between their father and the owner to show the character of their father's possession. Section 5410, Revised Statutes 1919, reads in part:

"No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility: *Provided,* that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party

to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor. . . ."

It is evident that plaintiffs are parties to this suit and that their right of action in issue and on trial as to title in them was derived from their father, who, if living, would be subject to disqualification as a witness regarding conversations with the owner as tend to show the character of their father's possession of the land. Under these circumstances the statute proscribes the right of plaintiffs to testify to such alleged conversations. Such conversations related to the cause of action in issue and on trial and were properly excluded.

VII. Plaintiffs complain of three declarations of. law in behalf of defendant given by the court. The purpose of declarations of law is to show the theory upon which the case was tried.

Plaintiffs complain of Instruction A because in effect it stated that Henry Eaton must have entered into possession of the land in good faith, believing that he was the owner thereof. They complain of Instruction B because it stated in effect that, before title can vest by adverse possession, the occupant must be in lawful possession of the land, and then defines lawful possession to mean possession by a person who entered into possession claiming to own it and in good faith believing he was the owner. They complain of Instruction C on the ground that it declares adverse possession is that possession of land by one person which is inconsistent with the possession or right of possession of another and that in theory adverse possession is founded on an original trespass.

Even though the instructions proceed upon the wrong hypothesis, which question we do not decide, nevertheless, in view of the admission of plaintiffs that James A. Eaton bought the land on or about October 15, 1881, paying $1920 therefor, receiving a warranty deed duly recorded, and in view of the opening statement of plaintiffs' counsel, by which plaintiffs are bound (Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539), that James A. Eaton came out to Missouri and bought the land in controversy, taking the title to himself and that he intended to give the land to his brother, Henry Eaton, and that Henry Eaton was put in possession of the land, the declarations of law, even if erroneous, were harmless and non-prejudicial.

There is no proof in the record that James A. Eaton held the property in trust for his brother, Henry Eaton. Under the facts in this case this relation could only have been shown by a declaration in writing (Rogers v. Ramey, 137 Mo. 598, 39 S. W. 66), and no contention is made by plaintiffs that such a writing was ever executed.

No prejudicial error appearing, the judgment is affirmed. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.