GUARANTY TRUST COMPANY OF NEW YORK, BECKIE FLORENCE BLOCH, LINDA B. HILLER AND LUDWIG SCHOLEM, AS EXECUTORS OF THE ESTATE OF ARTHUR BLOCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45500.   Promulgated January 31, 1933.

*Harry A. Yerkes, Jr., Esq.*, for the petitioners.
*O. J. Tall, Esq.*, and *W. Frank Gibbs, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency of $1,050.11 in estate tax. The errors assigned are (*a*) the failure of the Commis-

sioner to include as an allowance for inheritance taxes paid to the various states the sum of $4,509.10, being the amount of transfer tax paid to the State of New York; (b) the disallowance of a deduction for bequests to charities amounting to $200,388. In determining the deficiency the Commissioner assumed that only $8,486.02 had been paid as inheritance taxes to the States of New York and Pennsylvania. The parties have now stipulated that, in addition to the amount allowed by the Commissioner, the estate paid transfer tax to the State of New York in the amount of $4,509.10, making the total tax $12,995.12. Proper adjustment for this item will therefore be made in the recomputation under Rule 50.

The parties have stipulated a number of facts relating to the second assignment of error. Arthur Bloch, the decedent, died on February 7, 1928. His will was duly probated and letters testamentary were granted to the petitioners. The will provided that the residuary estate be held in trust and the income therefrom divided between the decedent's widow, Beckie Florence Bloch, and his daughter by a former marriage, Linda B. Hiller, during their joint lives. It also provided how this income should be divided in case the widow remarried, or in case the widow predeceased the daughter, leaving issue of her marriage with the testator, or in case the daughter predeceased the widow, leaving issue of her body surviving her. If neither had such issue, then upon the death of the one the other took all of the income for life. Upon the death of both the trust was to terminate and thereupon all of the residuary estate was to go to "the issue, if any, of my marriage with Beckie Florence Bloch and to the issue, if any, of my said daughter Linda in equal shares." The will further provided that the residuary estate should go to certain charities "should my wife die without leaving issue of her marriage with me her surviving, and should my daughter Linda die without leaving issue of her body her surviving." No issue of his marriage with Beckie Florence Bloch survived the decedent. Linda B. Hiller, who was younger than Beckie Florence Bloch, was born on September 23, 1886. At the time of the testator's death she was forty-two years of age. She is a widow and has no living issue. The stipulation contains a paragraph as follows:

Subject to the respondent's objection that evidence of the facts in this paragraph is inadmissible upon grounds of a sound public policy, and subject to the further objection that the facts in this paragraph are irrelevant and immaterial to the issue in this case, it is admitted that if Dr. Charles Huber, who resides at 131 East 80th Street, New York City, should be called as a witness in this case he would testify that on or about the 17th day of April, 1926, he performed a major operation on said Linda B. Hiller known as hysterectomy; that hysterectomy renders a woman forever wholly incapable of bearing children.

A value for the bequest to charity would have to be determined before the petitioners could succeed in any event. The record does not contain sufficient evidence from which we could determine that value but apparently the parties are in agreement as to the amount to be deducted, if any deduction is proper.

The question which the parties argue is whether or not the petitioners are entitled to a deduction under section 303 (a) (3) of the Revenue Act of 1926. This section allows a deduction of the amount of all bequests, legacies, devises, or transfers to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes. The petitioners contend for a deduction of the value of the remainder at the date of death. Since the daughter was incapable of having issue they claim the designated charities received a vested remainder under the testator's will. The respondent contends that the petitioners are not entitled to any deduction because, in the eyes of the law, children may be born to the daughter in which event the charities will get nothing. Thus, at death the charities took nothing substantial by way of bequest or devise.

The petitioners concede that there is a well recognized rule of law in this country that a woman is capable of bearing children irrespective of her age. But they contend that that rule has no application here, where a surgical operation has rendered Linda B. Hiller incapable of bearing children and has thus completely destroyed the possibility of issue. On this difference they would distinguish all cases where courts were considering only inability resulting from natural causes incident to advancing age. They consider the precise question presented in this case a novel one and cite no authority in support of their petition.

In *Ricards* v. *Safe Deposit & Trust Co. of Baltimore*, 97 Md. 608; 55 Atl. 384, the court was considering the question of the admissibility of medical testimony that Mrs. Ricards was incapable of bearing children. The details of the testimony are not set out in the report but it appears that medical witnesses had testified to physical conditions and expressed opinions that there was no possibility of Mrs. Ricards being the mother of children. The court said:

If proof like that now under consideration were admitted, upon what principle could evidence showing that an operation of the kind indicated had been performed be excluded? And, if not excluded, what would prevent interested parties from resorting to such or similar operations, if by a resort to them a mere equitable life estate could be converted into an absolute interest? It is wholly immaterial whether the inability to bear children arises from natural or from artificial causes. It is not the cause, but the fact, that alone controls the question, and the single fact to which the law looks is death.

The following is from *List* v. *Rodney*, 83 Pa. 483 :

Whether the rule rests upon the indelicacy of the acts to which such an inquiry might lead or to the great uncertainty of arriving at an accurate conclusion, we know not; but certain it is the rule has stood the test of time and received the sanction of ages.

See also *In Re Dougan*, 139 Ga. 351; 77 S. E. 158.

In *George E. Farrington, Executor*, 13 B. T. A. 274, we stated that the decisions support the view " that the law presumes conclusively, irrespective of the views of the witnesses, that children may be born to the daughter," and further, that " the courts have refused to recognize the possibility that no further issue would be born to claim the remainder. This rule has become uniform and well established. It has been founded on the practical necessity for maintaining the title to property free from confusion and also upon social considerations. The cases cited by the petitioner to indicate that the rule is not universal do not in our opinion affect the general doctrine. The intendment of the revenue act is to be read in the light of the well recognized rule rather than of the minor exception, and we see no reason to assume that Congress intended to ignore the rule in order to allow a deduction for the contingent interest of a municipality or charity. The testator intended the bequest to be contingent and the deduction of the revenue act goes no further." In affirming this case (*Farrington* v. *Commissioner*, 30 Fed. (2d) 915), the court quoted from *Hill* v. *Sangamon Loan & Trust Co.*, 295 Ill. 619; 129 N. E. 554, in part as follows :

If it can be determined that the possibility of issue is extinct in a woman in one case it may in another. * * * We think this rule of law sound on moral grounds and on grounds of public policy. If the rule were otherwise, surgical operations might be resorted to to make it absolutely certain that no issue could be born. * * * The law recognizes the possibility of issue in all adult women, and the single fact that terminates the ability to bear children is death.

The court then held that in the interests of good morals and public policy the universal rule should be followed in the determination of the estate tax. Certiorari was denied, 279 U. S. 873.

The petitioners argue that the language of the court in *Hill* v. *Sangamon Loan & Trust Co.* quoted in the *Farrington,* case, *supra*, to the effect that in law the single fact which terminates the ability to bear children is death, is dictum. No case can be found, they say, holding that a similar rule should apply in the face of uncontradicted medical testimony that a surgical operation has rendered a woman forever wholly incapable of bearing children. And, further, no question of public policy is involved in this case, since the operation was performed before the testator's death and was not resorted

to to make certain that no issue could be born, nor has the daughter any interest in the remainder. With these contentions of the petitioners we can not agree. It may be that the cases on this subject presented no more than an alleged inability to bear children due to natural causes, but nevertheless the discussions of operations in the above quotations do not constitute dicta. They express one of the reasons for the rule. The application of the rule may not depend upon when the woman underwent the operation, nor upon whether that woman is to share in the remainder. The present case falls within the rule and does not form an exception to it. Our judgment on this point is for the respondent.

*Decision will be entered under Rule 50.*