THRIFT REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50653. Promulgated December 14, 1933.

*Harry Troll, Esq.*, for the petitioner.
*J. G. Gibbs, Esq.*, for the respondent.

OPINION.

LEECH: Petitioner here contests a deficiency of $3,482.25 in income tax for the year 1922 and $174.11 representing a 5 percent negligence penalty as provided by section 250 (e) of the Revenue Act of 1921.

The deficiency arises by reason of the disallowance of certain deductions representing business expenses and amortization upon a leasehold and from an increase of petitioner's income by $31,975.45

as representing profit from the sale of certain real estate in the taxable year.

By the proceeding petitioner puts in issue the action of respondent in respect to each disallowance of a deduction claimed and also respondent's action in increasing income by the asserted profit upon the sale of real estate. The petition also raises additional issues, claiming a statutory net loss of $6,426.26 for 1921 and an overpayment of tax for 1922. However, upon the hearing, proof was presented solely upon the issue relating to the increase of income by $31,975.45 as representing profit from the sale of real estate. Petitioner has abandoned the other issues, and respondent is therefore sustained therein. Petitioner contends that respondent was in error in computing profit as realized by petitioner from the sale of real estate upon two grounds; the first being that the real estate in question was not the property of petitioner and any profit realized in its sale was consequently not taxable to petitioner, but to the then beneficial owners; and the second, that respondent is estopped to assert ownership of the property in petitioner by reason of the fact that he had settled by stipulation with petitioner an appeal covering prior years, in which the question presented was the beneficial ownership of this property for those years. Petitioner asserts that by the stipulation its returns for those years, which included in income none of the rents from this property, were agreed to be correct.

The facts are that the Thrift Realty Co., a Missouri corporation, was organized in the year 1909 with a capital stock of $25,000, its business being that of dealing in real estate.

From 1917 to March 1922 the stock of this company was held by Philip H. Sauter and Marion S. Fuqua, its president and its secretary-treasurer, respectively, and one or two of their relatives.

Early in the year 1917 Sauter and Fuqua were desirous of acquiring the Kolb Coal Co. The attorney for that company was one Harry Troll. This individual controlled the sale of certain parcels of real estate in St. Louis. When approached by Sauter and Fuqua, Troll proposed a deal whereby the funds necessary to be obtained for the purchase of the Kolb Co. stock would be secured for them by him if they in turn would acquire properties in his hands for sale, at certain designated figures. As a result of the negotiations Sauter and Fuqua in May 1917 acquired the coal company stock and also acquired through Troll a property known as 3518–26 Easton Avenue. For this latter property they agreed to pay $20,000. Title to this property was taken in the name of Sauter, owing to the fact that Fuqua had certain suits pending against him. Upon taking title Sauter executed a trust deed for $20,000 for the purchase price and also executed an assignment to the Lort Realty Co., as trustee, of the rents to be received from the property, this assignment being

for the benefit of the holder of the deed of trust. Sauter executed also a quitclaim deed to the property to Troll, as trustee, to be held in escrow and not recorded. This latter deed was executed in accordance with the agreement for purchase of the Kolb Coal Co. stock and to serve as additional security for the deferred payments on that stock due from Sauter and Fuqua.

In the following year Sauter became financially embarrassed and it was anticipated that suits would be filed against him, probably resulting in judgments encumbering such real estate as he held, and Troll, to maintain the security held by him under the Kolb Coal Co. deal, insisted that title to the Easton Avenue property be conveyed to another holder. Thereupon the quitclaim deed to this property held by Troll in escrow was canceled and Sauter conveyed title to the property to petitioner, subject to the deed of trust and assignment of rents standing against it. Upon receiving this conveyance petitioner executed a quitclaim deed to Troll, as trustee, to be held in escrow in place of the former quitclaim deed which had been canceled.

On April 9, 1919, the Easton Avenue property was exchanged for a property known as the Freemont Apartments, the deed of trust on the Easton Avenue property being released and a new deed of trust placed on the Freemont Apartments. The quitclaim deed held in escrow by Troll was canceled. The execution of this conveyance of the Easton Avenue property was by petitioner, which also executed the new deed of trust on the Freemont Apartments. Thereupon petitioner gave a quitclaim deed in trust to Troll for title to these apartments, to be held in place of the former quitclaim deed which was canceled. This deed was not recorded.

In December 1920, at which time the original loan to Sauter and Fuqua through Troll of approximately $400,000 had been reduced to $200,000 by payments of funds accruing to Sauter and Fuqua on account of rentals and income from the sale of other properties of these individuals, these two individuals borrowed this latter amount from the Kolb Coal Co., giving among the collateral therefor an assignment of rents from the Freemont Apartments, their Thrift Co. stock, and an escrow deed from the Thrift Co. for the Freemont Apartments in place of the one canceled by Troll upon repayment of his loan.

In November 1921 a contract to sell was made and in January 1922 the Freemont Apartments were sold in accordance therewith to Stanza & Co. Negotiations prior to the actual execution of the contract for the sale of the Freemont Apartments were conducted by Sauter and Fuqua as individuals. The contract for and the conveyance of this property to the purchasers were executed by the

petitioner, the quitclaim deed thereon held by Troll was canceled, and the payments by Stanza & Co. were made to petitioner. These payments were turned over by petitioner to the Kolb Coal Co. and applied upon the loans mentioned above of Sauter and Fuqua from that company. Sauter and Fuqua and his wife included in their individual income tax returns for 1922 certain amounts as representing profit on the sale of the Freemont Apartments received in that year.

The checks covering rental for the Easton Avenue and Freemont properties during the time record title stood in petitioner were made by the collector to the petitioner, but were taken up in the individual accounts of Sauter and Fuqua in equal proportions and so returned by them on their income tax returns for that period.

In 1923 a suit was filed against Sauter, Fuqua, and the petitioner by a real estate agent for commissions claimed to be due for the sale of the Freemont Apartments to Stanza & Co. To this suit an answer was filed by petitioner disclaiming any interest in the Freemont Apartments. This suit was ultimately compromised for $500, which amount was paid by Fuqua personally.

Respondent determined deficiencies against petitioner for the years 1917 to 1921 by increasing reported income by the rents received from the Easton Avenue property and Freemont Apartments. These deficiencies were appealed from by petitioner and this proceeding was terminated by a no deficiency order by this Board under Docket No. 23956, entered upon a formal stipulation filed by the parties that no deficiencies existed for those years.

The only issue here is the beneficial ownership of the Freemont Apartments in 1918, when sold by petitioner.

Inasmuch as this inquiry involves the title to real estate, the law of the State of Missouri, in which this property is situate, will control. *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349.

This question would ordinarily turn upon the existence of a trust for the benefit of another than the record title holder of the property conveyed, at the time of the sale from which the profit basing the disputed tax arose.

There is no evidence of fraud or mistake in the transfer to petitioner and therefore no constructive fraud is apparent. *Gates Hotel Co. v. Davis Real Estate Co.* (Mo., 1932), 52 S.W. (2d) 1011. Nothing appears in the record indicating that the consideration for the conveyance to petitioner was furnished by anybody other than petitioner, except the possible intimation that no consideration at all passed, which can not contradict the recital of consideration in the deed. *Rogers v. Ramey*, 137 Mo. 598; 39 S.W. 66; *Hunter v. Briggs*, 162 S.W. 204; *Eaton v. Curtis* (Mo., 1928), 4 S.W. (2d) 819. There is therefore no resulting trust, and if any trust relationship

then existed it must have been an express trust. *Shaw* v. *Shaw*, 86 Mo. 594; *Moss* v. *Ardrey*, 260 Mo. 595; 169 S.W. 6; *Crawford* v. *Crafton*, 193 Mo. 421; *Long* v. *Conrad* (Mo., 1931), 42 S.W. (2d) 357; *Gates Hotel Co., supra.*

The statute of frauds was in effect in Missouri at the time of the conveyance of the Freemont Apartments to petitioner. Missouri Revised Statutes 1909, sec. 2868. If a trust existed at all here, it has been completely executed. The general rule is that after a parol trust in real estate has been fully performed and executed, it will be upheld and the statute of frauds deemed to have no application. 39 Cyc., p. 52, and cases there cited. But the cited Missouri statute provides, not that a parol express trust in realty shall be voidable or not enforceable, but that such a trust shall be " void." It would seem that this statute, the purpose of which was to prevent the perpetration of fraud or perjury in connection with titles to real estate, *Kennedy* v. *Kennedy*, 57 Mo. 73; *Truskett* v. *Rice Bros. Live Stock Co.* (Kansas City Court of Appeals), 180 S.W. 1048, has an equally important function in preventing income tax evasion in reference to such titles by those means. Cf. *George E. Farrington et al., Executors*, 13 B.T.A. 274; *Guaranty Trust Co. of New York et al., Executors*, 27 B.T.A. 550.

However, " that it [trust in realty] was not created by written evidence is a matter of defense or to be raised by objection of the evidence offered to prove a trust." *Mugan* v. *Wheeler* (Mo., 1912), 145 S.W. 462. Respondent here has not taken advantage of either of these methods for properly raising the suggested position. Not only was much of the parol evidence of the alleged trust admitted at the hearing herein without his objection, but he has not questioned its competency since.

The present record shows not only that Sauter and Fuqua carried on the negotiations for the sale here involved, up to the actual execution of the contract therefor, as individuals, cf. *Nace Realty Co.*, 28 B.T.A. 467, but also that during the record ownership of the Easton Avenue and the Freemont properties by Sauter and petitioner they took into their individual accounts and reported in their appropriate income tax returns in equal proportions the rentals from these properties. It must be noted further and unavoidably that the several unrecorded escrow deeds to the changing holders of Sauter and Fuqua obligations, incurred in the original transaction in which these individuals acquired the Easton Avenue property, are emphatic in establishing the real beneficial ownership in Sauter and Fuqua.

The position that the purpose of the conveyance by these individuals to petitioner was fraudulent because intended to avoid the payment of a debt, as was present in *Keener* v. *Williams*, 271 S.W. 489, is

550

unsound. From the present record, silent as to the insolvency of Sauter and Fuqua at the time of such transfer, there was at most an intent on the part of these individuals to prefer a creditor.

A scrutiny of the evidence here discloses no established fact which, considered separately or in conjunction with others, is inconsistent with the status of trusteeship of this property in petitioner at the time of the sale in question. It does disclose direct, definite, and uncontradicted evidence consistent only with such status. Cf. *Moro Realty Holding Corp.*, 25 B.T.A. 1135.

In any event, the Missouri view seems to be that when A transfers lands to B by absolute conveyance, but for the purpose of selling the same and distributing the proceeds therefrom to A or his creditors, such a situation is outside the Missouri statute of frauds and may be proven by parol. The rationale of this rule is that a mere agency is thus created. *Forest* v. *Rogers*, 128 Mo. App. 6; 106 S.W. 1105; 39 Cyc., p. 52.

In our judgment the present record discloses that the transfer of the Easton Avenue property to petitioner was for the purpose of its sale and the distribution of the proceeds therefrom to certain creditors of Sauter and Fuqua. The exchange of the Easton Avenue property for the Freemont Apartments was merely an incident in effectuating that purpose. The execution and delivery of the unrecorded quitclaim deeds to each consecutive holder of the obligation of Sauter and Fuqua, which originally arose in their purchase of the Easton Avenue property, strengthens this view. The fact that petitioner was a corporation in which Sauter and Fuqua and their relatives owned all the stock does not affect the status of agency. *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415.

The record is large and a great part of the evidence has little, if any, bearing upon the issue. The preponderance of undisputed testimony seems unquestionably to sustain the position of petitioner. *Harriman Nat. Bank* v. *Commissioner*, 43 Fed. (2d) 950. After carefully considering the record as a whole, we sustain petitioner's contention that the beneficial ownership of this property was not in it, but in Sauter and Fuqua, at the time of its sale in 1922. It follows, consequently, that any profit arising from this sale is not taxable to petitioner.

The conclusion reached by us with respect to the taxability of the profit from the sale of this property makes it unnecessary to pass upon the issue of estoppel raised by petitioner.

*Judgment will be entered under Rule 50.*