SWOPE et al., Appellants, v. WARD et al.

### Division One, December 22, 1904.

1. **EJECTMENT: Claim of Ownership: Notice to Owner.** Where the defendant enters into possession of land under claim of ownership, with intention to claim the land, it is not essential, in order that the Statute of Limitations should begin to run in his favor, that actual notice of his claim should be brought home to the title owner. If his possession was so open and notorious and inconsistent with the title-owner's right of ownership that such title-owner should have known that his possession was under claim of adverse ownership, his possession was adverse, under claim of ownership, and no other notice to the title-owner is necessary. Notice is to be given only when possession begins in subordination to the title or possession of another.

2. ———: ———: **Squatter.** One who enters into land claiming at the time to be the owner, with an intention to claim the land, is not a squatter.

3. ———: ———: **Declarations.** The decisions of this court are not conflicting on the question of the admissibility of declarations of the person in visible possession as to the character of his occupancy. Title to land is not created by verbal declarations; but in all cases where title by limitation is relied on, and the possession is visible and actual, so as to furnish the title-owner ocular evidence thereof, such declarations, to third parties, tend to prove the intention of the occupant and the character of his possession, and are competent for that purpose.

4. ———: ———: **Self-Serving Declarations.** The admission in evidence of statements by the person in possession, to third persons, that he claimed a right to the possession or to the land, does not violate the rule that self-serving declarations are inadmissible.

5. ———: **Self-Serving Declarations: Verdict for Plaintiff Notwithstanding.** Although the court erroneously admitted in evidence statements of the defendants' deceased ancestor to the effect that he had bought the land or that it had been given to him, erroneous because not made in the presence of the title-owner, yet, the judgment will not be reversed on that account if the verdict, with that evidence out of the case, could not have been otherwise than for defendants, on the question of adverse possession.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

AFFIRMED.

*Beardsley, Gregory & Kirshner* for appellants.

(1) Thomas Ward was at the first a mere squatter. His entry upon the vacant land was with the consent of the owners. Before he or his heirs could claim adversely to the true owners there must have been some acts or declarations upon his part bringing notice home to the true owners of his determination to change his permissive holding into an adverse holding. The evidence shows that Ward was a squatter and his possession taken with the consent of the owner. He bought the first shanty on the premises, put up others, and never made claim to the owners or their representatives of any other interest except that of ownership of the building. The evidence shows him to have been a squatter, the rude buildings put up upon the premises were of a nature to indicate that that was his only claim, and the record owners of the land through all of the years paid the taxes, both general and special, upon the property. It was sought to overcome all this by offering in evidence statements of Ward, said to

have been made in his lifetime, claiming ownership of the land, with a view of proving his possession adverse. It was early held by this court that declarations in one's favor were not, under any circumstances, admissible. Turner v. Belden, 9 Mo. 792; Railroad v. View, 156 Mo. 618; Morey v. Staley, 54 Mo. 421; Mylar v. Hughes, 60 Mo. 111. A different doctrine has grown up alongside the one last referred to, beginning with Darrett v. Donnelly, 38 Mo. 494, which finds its latest expression in Whitaker v. Whitaker, 175 Mo. 1. It has, however, been uniformly and without exception held that possession which is permissive cannot be the basis of the statute, no matter how long continued; and that mere verbal statements of the party in possession, not brought home to the record owners, are not competent evidence that the holding has become adverse. Meier v. Meier, 105 Mo. 431; Stevenson v. Black, 168 Mo. 561; Pitzman v. Boyce, 111 Mo. 392; Fleming v. Kemp, 170 Mo. 238; Budd v. Collins, 69 Mo. 137; Hamilton v. Boggess, 63 Mo. 238; Eyerman v. Piron, 151 Mo. 117; Estes v. Long, 71 Mo. 609; Comstock v. Eastwood, 108 Mo. 48; Benoist v. Rothschild, 145 Mo. 409; Gordon v. Eans, 97 Mo. 603; Wilkerson v. Thompson, 82 Mo. 328; Harper v. Morse, 114 Mo. 325; Roberts v. Thomason, 174 Mo. 378; Meddis v. Kenney, 176 Mo. 208; Crawford v. Ahrens, 103 Mo. 94; In re Mayor City of New York, 63 Hun 630, 18 N. Y. S. 82; Blake v. Shriver, 27 Wash. 593, 68 Pac. 330; Hunnewell v. Burchett, 152 Mo. 613; Hunnewell v. Adams, 153 Mo. 444. The claim made by Thomas Ward, of ownership of building, was not enough; the claim must be of the fee. Brown v. Simpson's Heirs, 2 S. W. 644; Land Co. v. Rogers, 11 Tex. Civ. App. 184, 32 S. W. 713. There being no competent evidence of adverse holding, and the plaintiffs' record title being unassailable, the peremptory instruction for a verdict for plaintiffs should have been given. Brown v. Hartford, 173 Mo. 194. (2) The

court erred in permitting witnesses to testify that Thomas Ward had said in his lifetime that the land in controversy had been given him by Robert Campbell. Whitaker v. Whitaker, 157 Mo. 342, 175 Mo. 6.

*Ralph S. Latshaw* for respondents.

(1) It would seem absurd for the law to require proof of claim of ownership and yet exclude such declarations of defendants and those under whom they claim as to declarations made during the period claimed by them as limiting the recovery of plaintiff, nor has this court ever held that such declarations were inadmissible, and the cases cited in appellants' brief, so far from enunciating a different doctrine, especially distinguish the cases and establish the rule contended for by respondents. Turner v. Belden, 9 Mo. 792; Mylar v. Hughes, 60 Mo. 11; Railroad v. View, 156 Mo. 618; Darrett v. Donnelly, 38 Mo. 494; Martin v. Bonsack, 61 Mo. 559. Statements of ownership are not admissible to prove title, nor are they admissible to prove color of title, even where adverse possession is the defense where color of title is relied upon for possession of the whole by actual possession only of a part. But appellants do not cite any cases, nor will any cases be found in the reports of Missouri, where adverse possession was the defense set up and a claim made thereunder, as in this case, only for the property actually inclosed within fences, and actually in possession—no cases can be found where the courts have excluded statements of the person setting up adverse possession as to his claim of ownership made while in possession and prior to the institution of suit against him. And it is not necessary that these verbal statements of a party in adverse possession need be brought home to the record owners in order to become competent evidence under the defense of adverse possession. Miller v. Rosenberger, 144 Mo. 300. (2) The possession of

defendants and Thomas Ward, their ancestor, was not permissive in character. The facts in the case at bar are similar to those involved in the case of Wilkerson v. Eilers, 114 Mo. 245. (3) There was no error in permitting the statements of the deceased, Thomas Ward, that he had purchased the land. Mississippi Co. v. Vowels, 101 Mo. 225; Hunnewell v. Burchett, 152 Mo. 611.

MARSHALL, J.—This is an action in ejectment to recover that portion of lots ten, eleven, twelve and thirteen in block number eighty, which lie north of the Missouri Pacific railway, in East Kansas, an addition to Kansas City. The petition is in the usual form, and the ouster is laid as of January 2, 1895. The answer is a general denial. There was a verdict and judgment for the defendants, and the plaintiffs appealed.

The plaintiffs showed a record title from the United States government, through mesne conveyances to them, and that the defendants are in possession, and then rested.

The defendants claim title by limitation. The defendants called some twenty-five witnesses, by whom it was shown that from some time prior to 1867 until 1887 the land was owned by the Campbell family. In 1867 the land was of very small value, and a man named Davis, who had a brick-yard near by, entered upon and took possession of the land, without the consent or permission of the owner thereof, and erected upon it a one-story frame house, which he used for storing tools and for the convenience of his men. Davis sold to a man named Hooper, and about 1867 or 1868, Thomas E. Ward, the father of the defendants, bought from Hooper, and immediately entered into possession and continued to occupy it as his residence from that time until his death in 1896, and the defendants have continued in the possession ever since, claiming under him. At the time Ward purchased from Hooper,

there was only the small frame house aforesaid on the land. Afterwards Ward built another one-story frame house, a stable, a chicken house, a coal shed, and put up a fence along the front of the property and partly along the west side, and also put up fences around the chicken yard and around the garden which he maintained on the place.

There is no room for question in the case that Ward entered into the possession without the leave or permission of the owner, and that his possession was actual, open, notorious, continuous, uninterrupted, exclusive, under a claim of ownership, and adverse. The plaintiffs try to differentiate between a claim of ownership of the house and ownership of the land, but the evidence of many witnesses is that he claimed to own the whole place, and that he made no distinction in his claim between the land and the house. For about thirty years Ward lived on the place and raised a large family there and claimed it as his home. The Campbells knew he was living there, and that they had never given him any permission to do so, nor had he ever asked their leave to do so. In fact, the elder Campbell is shown to have said he expected to have trouble with them. Yet they took no steps to oust him, and in fact never said a word to him during the nineteen or twenty years that they continued to have title to the property after Ward's possession began. It appears that no one paid any taxes on the property prior to 1888.

Over the strenuous objection and exception of the plaintiffs the trial court permitted some twenty-odd witnesses to testify that Ward always claimed to own the land, and the ruling of the court in this regard and the instructions given as to such claim constitute the errors assigned in this court.

The plaintiffs in rebuttal introduced evidence tending to show that they purchased the land from the

Campbells in about 1887 (the exact time is not clearly shown in the abstract of the record) and that they had paid the taxes, general and special, ever since.

The plaintiffs also showed that in 1888 they had a suit between the plaintiff, Swope, herein and the ancestor of the other plaintiff, McElroy, about the land in the United States Circuit Court, at Kansas City, and that the deposition of Ward was taken in that case on December 3, 1888. The deposition was read in evidence in this case by the plaintiffs. In that deposition Ward testified that some time in the summer of 1887, the plaintiff, Swope, and James E. McElroy, the said ancestor of the other plaintiff herein, came to the place and asked him who lived there, and he told them that he did; that Swope said that McElroy had bought out the rest of the Campbell estate and that "we bought this place too;" that he told them that he had bought it in 1867 and that he "concluded" to live there while he lived; that Swope said, "We will put you out," and that he told them to "go ahead;" that they then said he would have to pay rent, but that he told them he wouldn't. At any rate, Ward continued thereafter to live there and to claim the place from that time (in the summer of 1887) until he died in 1896, and neither the plaintiffs nor any one else took any steps or said or did anything else, looking towards ousting him or contesting his claim to the place, until this suit was commenced on March 7, 1898.

## I.

The plaintiffs have the record title to the land. The defendants claim title by limitation. The chief error assigned is as to the ruling of the trial court, admitting testimony that the defendants' ancestor, during the time of his possession, which continued for about thirty years, claimed that he owned the land, and in the refusal of the court to instruct the jury to disregard those claims. The gravamen of the contention is

that no notice of such claim was brought home to the
plaintiffs. The trial court instructed the jury at the
request of the defendants that if they believed and
found from the evidence "that the defendants and those
under whom they claim title, have been in actual, ad-
verse, open, notorious and continued possession of the
land in question, claiming to own the same, for a
period of at least ten years before the commencement
of this action, then the plaintiffs cannot recover, and
your verdict must be for the defendants." The court
of its own motion also instructed the jury as follows:

"The evidence in this case shows the record title
to the lots in controversy in the plaintiffs. Defendants
claim that they are entitled to the lots in controversy
by reason of adverse possession thereof. Before de-
fendants can successfully maintain such claim, they
must show to the satisfaction of the jury that they, or
their ancestor Thomas Ward, through whom they
claim, had possession of the premises continuously for
a period of ten years before the commencement of this
suit, which was the seventh day of March, 1898, and
that such possession was adverse to the plaintiffs and
those under whom they claim. Adverse possession is a
possession in opposition to the true title and real owner,
and since the defendants rely upon adverse possession,
the burden is upon them to show to the satisfaction of
the jury that the defendants and their ancestor had
possession of the property under claim of ownership
thereof; and that such adverse possession under claim
of ownership was known to the plaintiffs or those
under whom they claim, or was of such character, so
open and notorious and inconsistent with the rights
of ownership in the plaintiffs or those under whom
they claim, that they (plaintiffs and those under whom
they claim) should have known that such possession
was under claim of adverse ownership, and unless de-
fendants have so shown, you will find your verdict for
the plaintiffs."

"There are five essential elements necessary to constitute an effective adverse possession: first, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous." [1 Am. and Eng. Ency. Law (2 Ed.), 795.]

The same author, at page 789, says:

"An adverse and hostile possession is one held for the possessor as distinguished from one held in subordination to the right of another; in other words, it is a possession inconsistent with the possession, or right of possession, of another. As applied to real estate, it is an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right, with the intent to assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party as to give him a cause of action.

"An adverse user means such a use of property as the owner himself would make, asking permission of no one, and disregarding all other claims to it so far as they conflict with this use.

"In order to constitute an effective adverse possession there must be an ouster of the real owner, followed by an actual, notorious, and continuous possession by the adverse claimant, with an intention on his part to claim in hostility to the title of the real owner.

"The intention with which possession is taken or held is regarded as a controlling factor in determining whether or not it is adverse. There must be an intention to claim the title as owner, and in derogation of the rights of the true owner."

It was well said by BURGESS, J., in Hunnewell v. Burchett, 152 Mo. l. c. 614, "'The term "adverse possession" designates a possession in opposition to the true title and real owner, and it implies that it commenced in wrong—by ouster or disseizen—and is main-

tained against right.· The law, on the contrary, presumes that every possession is rightful and consistent with, not in opposition or "adverse" to, title and ownership. A party, therefore, who relies upon "adverse possession" in order to rebut this presumption of possession consistent with the title of the real owner must prove his possession to be "adverse" to the title set up; that is, he must show actual knowledge of the real owner that he claims in opposition to, and defiance of, his title, or he must show such an occupancy and user, so open and notorious, and inconsistent with, as well as injurious to, the right of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner.' "

What constitutes an ouster within the meaning of the law, is thus expressed by the Supreme Court of the United States in Ewing v. Burnet, 11 Pet. (U. S.) 41: "An entry by one man on the land of another, is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done; if made under claim and color of right, it is an ouster; otherwise it is a mere trespass. The intention guides the entry and fixes its character."

The trial court did not contravene any of these principles of law in its ruling in this case, either as to the ·admission of evidence or as to the instructions.

It is claimed, however, that Ward was a mere squatter in the first instance, and that his declarations to third persons cannot raise his rights as a squatter to a fee simple title to the land, and that in order that the statute of limitations should begin to run in his favor it is essential that actual notice of his claim to the land should be brought home to the title owner.

The chief infirmity in this contention is that Ward was not a mere squatter. He entered into possession in the beginning under a claim of ownership, with an intention to claim the land. His entry was, therefore, an ouster of the legal possession in the plaintiffs or

their grantors, arising from the title. It was in no sense a permissive entry or possession and was not begun in subordination to or recognition of the title of the plaintiffs or of any one else, but was adverse in its inception. The rule of law as to the notice necessary to be given where the possession begins in subordination to the title or possession of another, therefore has no application in this case.

It is said, however, that there are two conflicting lines of cases in this State that have been running along together, one of which, illustrated by the cases of Turner v. Belden, 9 Mo. l. c. 792, and Railroad v. View, 156 Mo. l. c. 618, is that declarations of one in possession, to third persons, which are in derogation of the right of possession or which cut down the title, are admissible, as admissions against interest, but that when such declarations tend to sustain or enlarge the apparent interest of the person in possession, they are mere self-serving declarations, and therefore are inadmissible; and the other line, of which Darrett v. Donnelly, 38 Mo. l. c. 494, and Whitaker v. Whitaker, 175 Mo. 1, are illustrative, is that such declarations are admissible, *when title by limitation is relied on,* because they tend to explain the character of the possession.

But when properly understood there is no such conflict between those cases. Mere verbal declarations of a person in possession, made to either third persons or to the owner of the record title, cannot create a conveyance, or elevate the rights of a squatter into a fee simple title. Titles to land are not created by mere verbal declarations. But while this is true, it is likewise true that in all cases where title by limitation— that is, title by operation of law—is relied upon, it is necessary for the person in possession to prove that his possession was under a claim of right, claim of ownership, claim of appropriation and, therefore, was

a hostile claim, as it has been indifferently called. [1 Am. and Eng. Ency. Law (2 Ed.), 846.]

This being true, and this being one of the elements to be proven in a claim of title by limitation, the verbal declarations of the person in possession are admissible to show the character of the possession and to show the intention with which the possession was originally taken. Such declarations do not constitute title. They are really evidence tending to prove one of the elements of title necessary to be proved in cases where title by limitation is relied on. Where the possession is not visible or actual, such declarations, by themselves, would be wholly insufficient. But where the possession is visible and actual, so as to furnish the owner of the title ocular evidence of acts of proprietorship by the person in possession, such declarations when taken in connection with such acts of proprietorship tend to prove the intention of the person in possession and also that the possession is under a claim of right.

Of course the general rule of law as to all contracts or acts of a party is that admissions against interest are admissible, and that mere self-serving declarations are inadmissible, but this rule is not violated in admitting in a case involving the possession of real estate, where title by limitation alone is relied on, statements of the person in possession that he claimed a right to the possession or to the land. It would be a solecism to say such a party was required to show that the possession was under a claim of right, and to say that evidence that he had asserted such a claim of right was inadmissible. It is contended, however, that such a claim of right must be brought home to the title-owner. To so hold would be equivalent to holding that the claim of right required under the rule is synonymous with a notice to the owner, and if such had been the meaning of the rule the term notice would have been employed instead of the term claim of right.

In Whitaker v. Whitaker, 157 Mo. 342, evidence

that the party in possession had said he had acquired the interest of his brothers and sisters was properly held to be inadmissible, for an interest could only be acquired under the Statute of Frauds by an instrument of writing. Whereas, upon second appeal in the same case (175 Mo. 1) it was held that declarations of the the party in possession that he owned the land, were held to be admissible "as going to show the character of his possession, and therefore to sustain the plea of ten years' adverse possession." These cases illumine the difference between self-serving declarations and a claim of right which is necessary to be shown in cases of title claimed by limitation.

The evidence of such claim in this case was, therefore, properly admitted in connection with and explanatory of the possession, and the acts of ownership done by Ward on the land.

But this case does not wholly depend upon these principles, nor upon these declarations. For in addition to all this, after Ward had been in possession for nearly twenty years, the plaintiff Swope, and the ancestor of the plaintiff McElroy, made a personal visit to Ward, and notified him that they had purchased the land. He answered that he had bought the land in 1867, and had concluded to live there as long as he lived. They then told him they would put him out, and he told them to go ahead. They told him he would have to pay rent, and he replied that he wouldn't. This evidence was adduced in this case by the plaintiffs themselves. The plaintiffs, therefore, made out a stronger case for the defendants than they had made for themselves, and supplied the very elements which the plaintiffs now claim and then claimed it was necessary to put the Statute of Limitations in motion, to-wit, personal notice to the title owner of an adverse claim to the land by the party in possession.

This notice was given in the summer of 1887, and this suit was not begun until March 7, 1898. During

the period of more than ten years next before the beginning of this suit, Ward, or his heirs, were in the actual, open, notorious, continuous, uninterrupted, exclusive possession, under a claim of right, and upon personal notice to the plaintiffs thereof. Yet the plaintiffs took no steps to oust him or question his right during that time, although, even under the extremest view of the law, the Statute of Limitations was running in favor of Ward.

The defendants, therefore, are shown to have acquired title by limitation, and the judgment in their favor is for the right party.

During the examination of several of the witnesses for the defendants, the witnesses, in speaking of Ward's claim of title or right, said Ward had told them that he had bought the land or that Campbell had given it to him. As hereinbefore pointed out, such evidence was inadmissible, and such statements, not having been made in the presence of the title-owner, should have been excluded. But in view of all the evidence in the case, the admission of such evidence must be taken as harmless error, for the verdict of the jury could not have been otherwise than it was, even with such evidence out of the case. Hence, under the statute in this State (R. S. 1899, sec. 865,), the judgment will not be reversed for this reason.

For these reasons the judgment of the circuit court is affirmed.

All concur, except *Robinson, J.,* absent.