MAYOR AND COUNCIL OF FORSYTH *et al. v.* HOOKS.

No. 10662.   FEBRUARY 21, 1936.   REHEARING DENIED MARCH 20, 1936.

*Williams & Freeman,* for plaintiffs in error.

*Willingham & Willingham* and *Beck, Goodrich & Beck,* contra.

RUSSELL, Chief Justice. After a painstaking examination of the authorities cited by counsel, as well as others which were discovered as a result of quite laborious investigation, we have reached the conclusion that the court erred in not sustaining the demurrer to the petition and in not dismissing the action. It is to be borne in mind that while a demurrant must admit the truth of the statements of fact made by an opponent (whether the demurrer be addressed to a petition or be one in which the plaintiff attacks the answer of the defendant) when well pleaded, nevertheless another rule must be applied, which is that when the court is dealing with a demurrer the pleading attacked thereby is to be construed most strongly against the pleader, and that in the construction of a pleading it must be considered as a whole, and the allegations of one portion of the writing may not only render indefinite and obscure other portions, but may even serve the purpose of the demurrant. The petitioner in this case invokes the intervention of equity, and asks that the mayor and aldermen and the chief of police of the City of Forsyth be enjoined from interfering in any way with his possession of a strip of land which he is using in the prosecution of a lumber and coal business in which he is engaged. He alleges that he owns the land over which the city is endeavoring to extend Jackson Street in the City of Forsyth; that the city through its duly constituted authorities has ratified his ownership

and abandoned the portion of Jackson Street in controversy; and that for the subsequent thirteen years he has been in the peaceable and undisputed possession of the premises, and using it not only as a necessary adjunct to the portions of his business on a lot purchased from Phinizy, but also on a lot purchased from Mrs. Bittick on the opposite side of the strip which petitioner alleges has never been used as a street. He further alleges that this strip of land is his only means of ingress and egress from the two lots just referred to; that his damages in case the city is allowed to proceed will be irreparable; that he has no adequate remedy at law; that if the strip of land in question were ever used as a portion of Jackson Street, it has been abandoned. So we come to consider the sufficiency of the petition, as matter of law, to withstand the general demurrer. Apart from the ground of demurrer in which the defendants allege that there is no allegation of insolvency on the part of the city, and therefore that the petitioner has an adequate remedy at law (a principle which the writer does not deem it necessary to discuss at this time), there are several grounds of general demurrer which, in our opinion, should have been sustained on principles frequently enunciated by this court as well as by courts of other jurisdictions.

■ In the second paragraph of his petition the plaintiff describes the lot "owned" by him as two tracts, one of 1-1/4 acres more or less, purchased from Mrs. Bittick, and one of 1 acre more or less, purchased from J. H. Phinizy. It will be noted that in this allegation he does not claim that he owns the land which the petition further on shows lies between these two purchases. After alleging in the third paragraph the nature of his business and the buildings on the two lots to which we have just referred, he omits to state that he has ever built anything on the strip of land which he alleges the city is endeavoring to extend as a street. It must therefore be assumed that he made no financial investment on the parcel of land to which he claims title and possession. In the sixth paragraph the petitioner alleges that the tract of land in controversy "is not now and never has been a public street of said city, and has never been dedicated in any manner known to law to public use as a street of said city." This is a positive statement, but it is not supported by the statement of any facts which indicate that it has never been a public street and has never been dedicated to the public use. It

is a mere conclusion of the pleader. This paragraph must be construed with other allegations in the petition, especially the allegations of paragraph 17, in which it is alleged "that the property referred to has never constituted a part of the public streets of Forsyth, but has always been held and enjoyed by owners of the two pieces of property acquired by petitioner as aforesaid, his predecessors in title." This statement is not supported by other allegations of the petition or the allegations of paragraph 17 itself, which amount to a mere conclusion of the pleader. Furthermore, the allegations of paragraph 17 must be considered in connection with paragraph 7, on which, properly construed, it rests, and in which it is alleged that the Mayor and Aldermen of the City of Forsyth had passed a resolution "to the effect that said city asserted no title or claim to said property," and this action is alluded to in the 8th paragraph as a "ratification" of petitioner's "title to said lot." We are not aware of any decision of this court or rule of law, nor have we been able to find one, which provides that the corporate authorities of a municipality can either grant or "ratify" an act ultra vires on its part. And certainly the mayor and aldermen, representing the city, had no right to convey to the petitioner property which it never had, as he alleges in other paragraphs of the petition, or to ratify his title to a street which he alleges was never a street. Since it is elsewhere stated in the petition that he had not purchased the property in controversy, and that the city never had any interest in it, a conclusion that title could be perfected by the other facts alleged can not be supported.

The allegations of paragraph 9, that in litigation with Phinizy, Tribble, and Bittick the plaintiff obtained a verdict and decree against those individuals, present no reason for overruling the demurrer. The City of Forsyth was no party to the litigation referred to, and therefore was not affected by the result. Furthermore, it is well settled that a municipal corporation can not sell a street or abandon it by mere non-user. Paragraph 11 of the petition is subject to general demurrer. In this paragraph the petitioner alleges that the property in question has never been dedicated to any public use as a city street of Forsyth, and that as owner of the property on each side thereof he is the owner of the same in fee simple. No facts are stated which will authorize the conclusion

that the property in question "has never been dedicated to any public use as a city street of Forsyth;" but even if this allegation were supported by a statement of facts which established it, the conclusion that "as owner of the property on each side thereof he is the owner of the same in fee simple" is erroneous and unfounded. There are circumstances in which, if an easement be granted for a highway (which includes streets of a city), and the highway is lawfully abandoned, title to the land formerly subjected to the easement would revert to the grantor or his successors. But where it is alleged broadly that the land in question was never a street, there is no doctrine of which we are aware that would give the owner of the property title in fee simple to the property lying between adjacent lots of such owner, merely because it has not been used as a street. Under the averments of the petition the plaintiff had no title, and none could be derived under the statute by prescription. He was not in a position to ask for injunction upon the basis of possession of the character alleged.

In *Flannery* v. *Hightower*, 97 *Ga.* 592 (25 S. E. 371), it was held: "Even as against a wrong-doer, an injunction will not, at the suit of a stranger to the title or possession, issue to restrain a trespass and stay waste about to be committed by cutting timber upon land; and one is such a stranger who neither claims the legal title or the right of possession thereunder, nor is in the actual possession . . under such claim of right as might ripen into a title by prescription." See also Powell on Actions for Land, 434, § 327, in which it is said: "Before prescription can arise under an asserted claim of right, the claim must be honestly entertained. To enter upon lands without any right to do so and without the bona fide claim of any right to do so is a bald trespass, which, it is true, may give the possessor, so entering, a form of property in his bare possession sufficient to enable him to hold the land as against subsequent intruders, but which can never ripen into prescriptive title. A person entering upon lands, not claiming in good faith the right to do so by virtue of any title of his own or by virtue of some agreement with some one else whom he believes to hold the title, is called a squatter. A squatter can never gain prescriptive title to land, no matter how long he holds the possession. His possession is never considered as adverse." On this point the matter is well settled, and is controlled by the ruling in *Crawford* v.

*Crawford,* 143 *Ga.* 310 (supra), where it was held: "Equity will not, at the instance of one in possession of land, afford affirmative relief, such as the cancellation of deeds as clouds upon title, or the grant of an injunction against interference with his possession, where it appears that he has no title and his only relation to the property is possession acquired under such circumstances as that no prescription could be based thereon." Mr. Justice Atkinson, delivering the opinion of the court, said: "The relief sought was affirmative and purely equitable—the cancellation of deeds as clouds upon title, and an injunction against interference with possession. There was no pretense of title in plaintiff, save as might be derived from his long-continued possession, which commenced in 1861. [The case was tried in 1914]. The excerpt [quoted from the pleading] shows affirmatively that when he entered possession he did so without any title or claim of title, intending that his possession should be exclusive and adverse. It is true that he says his entry of possession was 'in good faith,' but that is to be considered in connection with the other allegations; among them, that he had no title from any one, and he 'knew of no owner or claimant' to the land. When the whole is considered, it shows his possession to be that of a mere 'squatter,' which, however long continued, would never ripen into a prescriptive title. *Compton* v. *Newton,* 129 *Ga.* 619 (59 S. E. 270)."

In the *Compton* case, last cited, in which the opinion of the entire court was delivered by Mr. Justice Beck, the vendee of the land in controversy claimed a prescriptive title based on seven years possession under color of title. The suit was brought against Newton et al., to enjoin them from trespassing upon a described lot of land. The Newtons claimed the right to work the timber and turpentine on the land, under a lease from Reeves. Reeves testified, in favor of the defendants, that he got a deed from one Johnson in 1884; that on the faith of his purchase he built a dwelling-house, corn-crib, smoke-house, and stable on the land in 1884; that he had been continuously in possession ever since; that nobody had ever set up a claim against his possession until the year 1906. Also: "I considered the title I got to it a good title from the fact that I saw no other person claiming it, and these parties had been there since 1865. These parties squatted there in 1865, and stayed right on it until they traded their interest to Mr. J.

Johnson." This court, after quoting from *Brown* v. *Wells,* 44 *Ga.* 573, that "The point in the case is, whether the defendant, under the evidence, was a purchaser of a mere squatter's title, or whether he was a purchaser under a bona fide claim of right to the land. If he knew at the time of the purchase that he was purchasing a mere squatter's title, he stands in no better condition than the original squatter, as against the title of the true owner of the land," ruled that "A mere squatter on a lot of land, without color of title or claim of right, can not defeat the title of the true owner by conveying the land to other purchasers who have full knowledge of the nature and character of the title when they purchase it, although they may have been in possession of it for seven years under such title." Properly construed, the allegations of the petition in this case, especially those contained in paragraph 7, authorize the conclusion that whoever used the strip of land in controversy had no higher degree of ownership than mere squatters.

■ Of course the Mayor and Aldermen of Forsyth were not bound by the litigation which other persons instituted against petitioner; for the municipality was not a party, and therefore not affected by this litigation. A subdivision of the State government, as a trustee for the interests of the people, can not be so bound; for any action upon their part and beyond the scope of their power would be ultra vires. For the same reason, the resolution of the aldermanic body, purporting to disclaim title to any right which might have inhered in the municipality, was ultra vires and void.

■ From what has already been said it seems to be clear that the court erred in not sustaining the general demurrer and in not dismissing the action; and we deem it unnecessary to extend this opinion with a discussion of other defects in the allegations assailed by demurrer. As the petition should have been dismissed upon demurrer, further proceedings in the trial, and the direction of the verdict, were nugatory.

*Judgment reversed. All the Justices concur, except Hutcheson, J., who dissents.*