James Winfred MOSS and Mildred E. W. Moss, Husband and Wife, Paul S. Hollenbeck, Trustee, Alex C. Hayes, Jr., and Anna Hayes, Husband and wife, Appellants,

v.

A. L. JAMES and Carney James, Respondents.

No. 52255.

Supreme Court of Missouri, Division No. 2.

Jan. 9, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 13, 1967.

Harold S. Hutchison, Vienna, Claude T. Wood, Richland, for plaintiffs-appellants.

Northern & Crow, Rolla, for defendants-respondents.

DONNELLY, Judge.

This case involves title to real estate located in Maries County, Missouri. Appellants Moss commenced the action in the Circuit Court of Maries County, Missouri, by petition for injunctive relief and for damages for trespass. Respondents James counterclaimed asking the Court to quiet title in respondent A. L. James on the theory of adverse possession. The trial court, without a jury, found against appellants on their petition, and for respondent A. L. James on the counterclaim.

The area in dispute is located in the Southeast Quarter of Section 27, Township 39, Range 9, in Maries County, Missouri. It consists of a narrow strip of land bounded on the north by a county road, on the south by Dry Creek, on the east by a low-water bridge, and on the west by the North and South Midline of Section 27. The county road runs east and west. Dry Creek flows in an eastwardly direction.

The basic cause of the controversy was a survey made in 1940 which erroneously placed the North and South Midline of Section 27 at the low-water bridge. The accurate location of the North and South Midline of Section 27 is a line approximately 1300 feet west of the low-water bridge.

The record title to the disputed area is in appellants. Respondents assert ownership by adverse possession. The record indicates a lack of express notice to appellants of an adverse assertion of ownership by respondents until the early part of September, 1963, and that respondents did not pay taxes on the land in dispute.

Appellant James Winfred Moss purchased his land in 1959. He testified that thereafter he exercised all the rights of ownership on the land in dispute, which included cutting wood from it and hauling gravel out of it, and that at no time did the respondents protest.

The evidence is conflicting and confusing as to what portion of the area in dispute was fenced by respondents for the statutory period. It is obvious that the whole area was not fenced. A fence extended from the west boundary line of the disputed area

along the county road for some distance, then crossed the disputed area to the creek, and then extended on east to the low-water bridge.

Respondent A. L. James testified he received a deed from Christy Davis in 1940, and has been in possession of the land in dispute ever since. After he purchased the land he sold gravel from a location about thirty yards above the bridge. He pastured cattle south of the road and west of the bridge a good many years, how many he did not know, but he supposed it was more than ten years. He said he pastured the land "off and on" and he cut hay from the disputed area for a period which could be more than ten years. He was paid for gravel from the disputed area for the construction of Highway Y in 1961. The W.P.A. took gravel from the area for their roads. He cut four or five dead elm trees and some sycamore sprouts in the area and nobody objected. In 1943 gravel was taken from the disputed area to build a bridge. Charley Finn was the overseer of the bridge and he took the gravel to build the bridge and obtained permission from James. The Ajax Pipeline "sprung a leak" and spilled some oil in 1950 which killed some timber in the disputed area. Ajax made a settlement with James for the damage and paid him $500.

Respondent Carney James testified that he is the son of respondent A. L. James and has lived on his father's farm for about fifteen or twenty years. He testified that he and his father claimed everything south of the county road as far east as the low-water bridge because "it was where the surveyor said the true boundary line was." When appellants' counsel attempted to get Carney James to admit respondents were claiming the land south of the county road as far to the east as the low-water bridge because they thought that was the true boundary line, he answered by saying, "we claimed it because we had possession of it." According to Carney James, he and his father had been in possession of the land in dispute for over twenty-five years. He tes-

tified that since 1940 he and his father had removed twenty-five or thirty thousand yards of gravel, had cut three or four cords of wood, and had changed the channel of Dry Creek, all in the area between the county road and Dry Creek and west of the low-water bridge. He further testified that he had rented the area from his father starting in 1945, had pastured his cattle in the area, had cut hay from it, and that in 1950, when a pipeline broke and the oil caught on fire, he and his father were paid $500 for the damage done to the area between the creek and the road and west of the bridge.

The decree of the trial court reads in part as follows: "[T]he Court * * * being fully advised of and concerning the premises on this 17th day of May, 1965, finds the issues herein joined against the plaintiffs on Count I and Count II of plaintiffs' petition and for the defendants, A. L. James and Carney James, on their counterclaim; and finds, adjudges and decrees that defendant A. L. James is vested with the fee simple title to the real estate hereinafter described having established title by adverse possession under Section 516.010 of the Statutes of Missouri, to wit:

"That part of the Southeast Quarter (SE¼) of Section 27, Township 39 North, Range 9 West in Maries County, Missouri bounded on the North by County Road, on the South by Dry Creek, on the East by a low-water bridge and on the West by the North and South midline of said Section 27.

"And the Court further finds, adjudges and decrees that plaintiffs have no right, claim or interest in said estate or title whatsoever, either legal or equitable in or to said real estate."

■ We determine whether the trial court was warranted under the evidence in establishing title by adverse possession in respondent A. L. James. "There are five essential elements necessary to constitute an effective adverse possession: First, the

possession must be hostile, and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and, fifth, it must be continuous." Swope et al. v. Ward et al., 185 Mo. 316, 324, 84 S.W. 895, 896. "Whenever any of these elements is lacking, no title by adverse possession can ripen." Eaton v. Curtis, 319 Mo. 660, 4 S.W.2d 819. The burden of proof as to each of the five elements is on the persons claiming title through adverse possession. State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174.

■ Appellants first contend the record demonstrates that the claim of respondents was not hostile and adverse because respondents were under a "mistaken and erroneous belief as to the location of the north south mid-section line of Section 27," and, therefore, that respondents intended to claim only to the true east boundary line of the disputed area, which the trial court found to be 1300 feet west of where respondents first thought it to be. Appellants cite Bell v. Barrett, Mo.Sup., 76 S.W.2d 394, in support of their contention. The Bell case does not assist appellants. In State ex rel. Edie v. Shain, supra, 348 Mo. 119, 124, 152 S.W.2d 174, 177, appears language appropriate here, as follows: "It is true that in the case of Bell v. Barrett, * * * we held that there was insufficient evidence in that record to sustain a finding of adverse possession, but the facts were wholly different from those in the case at bar. * * * [I]n the Bell case * * * the evidence was clear that the person claiming adverse possession had occupied the land in question, knowing that there was a dispute in title and intending to make the final boundary line the one which would ultimately be determined by a correct survey. His occupancy was, therefore, provisional and contingent. There is nothing in the testimony in the case at bar from which such a mental attitude on the part of defendants or their grantor can be inferred."

Both respondents made statements in the record that they intended to claim all of the land in dispute regardless of the true location of the boundary line. The Bell case recognizes that under such evidence the trial court could properly determine the matter either way.

Appellants further contend that respondents wholly failed to prove "possession" for ten consecutive years so as to sustain a finding of adverse possession. In Cashion v. Meredith, 333 Mo. 970, 64 S.W.2d 670, 672, we quoted from the early case of Draper v. Shoot, 25 Mo. 197, 201, as follows: " 'It is no easy matter to say what is an adverse possession. It is a question compounded of law and fact, and every case in which it is involved must be determined by its own circumstances. What is adverse possession is one thing in a populous county, another in a sparsely settled one, and still a different thing in a town or village. To constitute an adverse possession there need not be a fence, building, or other improvement made; and it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute. Much depends upon the nature [and situation] of the property, and the uses to which it can be applied, or to which the claimant may choose to apply it.' "

We note also the case of Herbst v. Merrifield et al., 133 Mo. 267, 270, 271, 34 S.W. 571, 572, where we said: "The occasional cutting of firewood, or the taking of rock from this land, by defendant Merrifield and others by his permission, after the manner indicated by the testimony in the case, could not have been considered other than as a temporary trespass, in the absence of an express showing to the contrary, even if it were conceded or had proof been made that plaintiff's grantors knew of the acts, and made no complaint (which, however, are not the facts of this case). Possession, to constitute a disseisin against the owner of the legal title, when not actual, must generally be so notorious

by acts of assertion that it may be presumed to have been known to the rightful owner. It should be so open and notorious that, in passing by or over his lands, the owner could not reasonably be deceived. Acts of ownership by others than the holder of the legal title should not be held sufficient to constitute adverse possession, unless they were of such frequency and of such character as would at all times apprise the real owner that his seisin was interrupted, and that his title was endangered. Most dangerous results would flow from the permission by courts of titles by limitation to ripen in favor of those holding mere color of title, without actual occupancy, by acts of ownership so slight in and of themselves, not calculated to attract the attention of the real owner, or to indicate that his seisin (that follows his legal title) was interrupted. An occasional trespass, by way of cutting timbers or digging a few loads of rock, is not sufficient to amount to an adverse assertion of title against the true owner, in the absence of express notice to the owner of such assertion of ownership by the trespasser."

However, additional facts exist here. Since 1940, respondents removed twenty-five or thirty thousand yards of gravel, they cut a few cords of wood, they changed the channel of the creek, they pastured cattle in the area, they cut hay from the area, and they asserted ownership for the purpose of collecting compensation for damage done to the area. On this record, these acts of ownership were of such frequency and character as would at all times apprise appellants, and their predecessors, that their title was endangered.

This case was tried by the trial court without a jury. We review it "upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." S.Ct. Rule 73.01(d), V.A.M.R.

We are of the opinion that the trial court was fully warranted in entering its judgment, and it is, therefore, affirmed.

All of the Judges concur.