**WILTON BOAT CLUB, an unincorporated association by its members, Chester Reeder et al., (Plaintiffs) Respondents,**

v.

**Gladys Leona HAZELL, Substitute Defendant for Laurence E. Hazell, Deceased, (Defendant) Appellant,**

**Missouri, Kansas & Eastern Railway Company et al., Defendants.**

**No. 57378.**

Supreme Court of Missouri, Division No. 1.

Dec. 10, 1973.

Scott Orr, Sapp, Woods, Dannov & Orr, Columbia, for respondents- plaintiffs.

Harry T. Limerick, Jr., Columbia, for appellant.

HOLMAN, Judge.

■ This suit to quiet title was filed by eighteen individuals who are said to be members of the Wilton Boat Club, an unincorporated association. A number of defendants were named but the only one filing a pleading was Laurence E. Hazell. In addition to an answer, he filed a counterclaim wherein he sought in Count I to quiet title in himself to the same land described in plaintiffs' petition and, in Count II, damages for the trespasses of plaintiffs. It was stipulated that the right-of-way of the Missouri, Kansas and Texas Railway Company is not affected by this suit. A trial resulted in a judgment in favor of plaintiffs on their petition and also on the counterclaim. As hereinafter explained, an appeal has been taken to this court. We have jurisdiction since title to real estate is involved and the notice of appeal was filed prior to January 1, 1972. Mo.Const. Art. V, § 3, V.A.M.S.

Plaintiffs claimed title by adverse possession. Defendant Laurence Hazell claimed to be the record owner of a part of the land in question, and the owner of the remainder because it had accreted to his land. The deeds admitted in evidence showed, however, that the land was conveyed to Laurence and his wife Gladys as tenants by the entirety. After the judgment was entered it developed that Laurence had died while the case was under submission. Had no further action been taken, the judgment would likely have been of limited and questionable validity since Gladys, a necessary party, was not a party to the suit. However, Gladys promptly filed a motion to be made a party, alleging that by reason of the death of her husband she was now the sole owner of the property and entitled to be made a party in order to protect her interests. The court entered an order making Gladys a party defendant and, within the appropriate time, she filed a motion for new trial. The motion was directed to the merits and not upon the fact that she had not been made a party prior to judgment. The motion was overruled and Gladys filed a notice of appeal in which she designated herself as "substitute party for Laurence E. Hazell." She has briefed the case here on the merits.

■ The foregoing situation is indeed unusual. We have the view that Gladys could not have been brought in involuntarily and bound by the trial and judgment herein since she was not a party in the case. However, since she voluntarily sought to be made a party (without objection from plaintiffs) and elected to be substituted for her deceased husband, and, as the alleged sole record owner of the property filed a motion for new trial on the merits and has so briefed the case here, we hold that she has adopted all proceedings occurring before she was made a party and will be bound by the final decision in this case.

The land in controversy is located in Boone County and described as the North Half of Section 35, Township 46, Range 13, lying south and west of the railroad right-of-way. One witness said the tract contained two or three acres. It has not been assessed for taxes, and one witness said "it wouldn't be worth paying taxes on." It fronts on the Missouri River and for many years has been used by some of the plaintiffs and by other members of the public as a place to tie up their fishing boats. Several of the plaintiffs are commercial fishermen and fish all the way from Brunswick to Jefferson City. This land floods when the river rises and, since 1962, the lower part has been built up considerably by deposit of sediment. Laurence testified that eight or ten acres had accreted to his original shoreline.

The boat club was organized in 1968. At about that time the members requested that the railroad company construct a crossing to this land and the company refused on the ground that no one owned the land. It was this development which apparently caused plaintiffs to file this suit seeking title to the tract. Plaintiffs alleged "that title to said real estate has vested in them and those under whom they claim by limitations under the provisions of § 516.070, RSMo 1959 [V.A.M.S.], and other sections thereof; that plaintiffs and those under whom they claim title have been in hostile, actual, open, notorious, exclusive and continuous and adverse possession of this land for over 31 years next to this date and that no taxes have [been] nor are now assessed thereon." Although plaintiffs pleaded the 31-year statute, they now contend that they were entitled to judgment upon proof of 10 years' adverse possession under § 516.010.[1] For the purposes of this case we will assume (but do not decide) that such is the case.

■ We have concluded that the evidence does not support a finding that plaintiffs acquired title by adverse posses-

sion. It is true that, in answer to leading questions, several of the plaintiffs testified that they claimed the land by virtue of open, hostile, exclusive, and adverse possession. However, the facts developed do not support that assertion. The facts were that several of the plaintiffs had used this area for a number of years (perhaps 20 years or longer) as a place to tie up and launch their fishing boats. Through the years three sheds have been built on the land to store fishing equipment but they washed away during high water. The only shed presently in the area was moved to the railroad right-of-way in order to avoid the high water. From 1946 to 1948 one of the plaintiffs had a sawmill in this area but its exact location does not appear.

The evidence indicates that plaintiffs did not claim to have exclusive possession of the land. Durwood Hazell testified as follows: "Q. You were the only ones that used the property? A. No. Q. Who else used the property? A. Anyone in the country around there if they wanted to put a boat in or out or drag out some piling, he did that." Another plaintiff stated that "people come down there and fish from all over the country." Emmitt Crump gave the following testimony: "Q. What other use did you make of this land? A. Well, just for picnic and fishing. Q. Who used these grounds? A. Anybody that wanted to." At this point it seems appropriate to consider the law relating to the power of more than one adverse claimant to have exclusive possession of land. It has been said that "[a]s a general rule, exclusive possession of an adverse claimant cannot be based on use or occupation in common with neighbors, third persons, or the public generally; but two or more persons claiming as cotenants may as such have such a joint possession as will ripen into title." 2 C.J.S. Adverse Possession § 56, p. 729. It is our view that it would be possible to have a group which is so cohesive and strongly organized that the joint possession of its members could

1. Statutory references are to RSMo 1969, V.A.M.S.

ripen into a cotenancy title. In this case, however, the evidence does not indicate that plaintiffs had any such organization prior to 1968. If they considered themselves to be a group it was very informal.

Our interest has been aroused by the fact that several of the plaintiffs testified that they claimed "squatters rights" to this land. For example, James Crump testified, "Q. Did you claim title to all this property? A. Well, just squatters rights." Jesse Calvin testified as follows: "Q. Did you claim that you owned this property? A. No, I didn't claim we owned it. We had squatters rights on it. We went down there and took care of it; that's the only place we had to tie our boats up." Another plaintiff testified: "A. All I did was help clean the land up and we possessed it as squatters rights. Q. Then your claim is based on squatters rights, is that right? A. That's right." And finally, John Batye testified that he was a friend of the plaintiffs and that "these boys" had told him that "they wanted squatters rights" to this land.

It appears that that testimony is actually adverse to the claim of plaintiffs as indicated by the following: "2 Bouv. Law Dict., Rawle's Third Revision, p. 3115, defines a squatter as 'one who settles on the lands of another without any legal authority; this term is applied particularly to persons who settle on the public land.' It is generally held, to quote a headnote in Mayor et al. v. Hooks, 182 Ga. 78, 184 S.E. 724, that 'A "squatter" is a person entering upon lands, not claiming in good faith the right to do so by virtue * * * of some agreement with another whom he believes to hold the title.' Also, that a ' " 'squatter' " ' can never gain prescriptive title to land, regardless of how long he holds possession, since his possession is never considered as adverse.' " Conway v. Shuck, 203 Ark. 559, 157 S.W.2d 777, 778 (1942).

The decree of the trial court adjudged that the eighteen plaintiffs are the owners of the land in question as tenants in common. This decree had to be based upon a finding of title by adverse possession. As has often been said, " 'There are five essential elements necessary to constitute an effective adverse possession: First, the possession must be hostile, and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous.' Swope et al. v. Ward et al., 185 Mo. 316, 324, 84 S.W. 895, 896. 'Whenever any of these elements is lacking, no title by adverse possession can ripen.' Eaton v. Curtis, 319 Mo. 660, 4 S.W. 2d 819. The burden of proof as to each of the five elements is on the persons claiming title through adverse possession. State ex rel. Edie v. Shain, 348 Mo. 119, 152 S. W.2d 174." Moss v. James, 411 S.W.2d 104, 105–106 (Mo.1967).

As heretofore indicated, we hold that plaintiffs have failed to prove the elements required to obtain title by adverse possession. See Bramlett v. Harris and Eliza Kempner Fund, 462 S.W.2d 104 (Tex. 1971); Cook v. Bolin, 296 S.W.2d 181 (Mo.App.1956), and Himmelberger-Harrison Lmbr. Co. v. McCabe, 220 Mo. 154, 119 S.W. 357 (1909). It should also be noted that two quit-claim deeds were offered by plaintiffs and admitted in evidence. These were obtained after the suit was filed and purported to convey the land in question to four of the plaintiffs. The grantors appeared to have been former owners (or their successors) who had conveyed the land to Laurence and Gladys Hazell. In our judgment these grantors had no title which they could convey and hence the deeds did not aid plaintiffs.

We now consider defendants' counterclaim. In 1952, Laurence and Gladys Hazell obtained a deed to a tract containing 13.44 acres. It was stated to be located in Section 26, but it contained a metes and bounds description which showed that the tract extended into Section 35 and ran to the north bank of the Missouri River. This apparently included some of the land in controversy here. Surveys in evidence

indicate that the incorrect section number may be disregarded and the land described in the deed readily ascertained. We rule that the deed conveyed to the Hazells the tract therein described by metes and bounds as shown in the surveys. Federal Land Bank v. McColgan, 332 Mo. 860, 59 S.W.2d 1052 (1933); Boxley v. Easter, 319 S.W.2d 628 (Mo.1959).

A portion of the land in question has been built up by accretion to the former shoreline of the river. In 1955, the Hazells obtained another quit-claim deed from the grantors in their first deed which purported to convey all of the land adjacent to and lying west of the tract described in the first deed. Laurence Hazell testified that he obtained this deed to show his title to the land that had accreted to his tract. This action was unnecessary because the Hazells would own the land which accreted to the front of the shoreline of the original tract as a matter of law. Doebbeling v. Hall, 310 Mo. 204, 274 S.W.2d 1049 (1925); Dumm v. Cole County, 315 Mo. 568, 287 S.W. 445 (1926).

It is accordingly our view that defendant Gladys Hazell is now the owner of so much of the disputed land as was conveyed by the aforementioned deeds, and to the portion that has lawfully accreted to the shoreline of the tract as said shoreline existed at the time of the 1952 conveyance.

No evidence was offered by Laurence in support of his claim for damages in Count II of his counterclaim and that count is not mentioned on appeal.

The judgment of the trial court is reversed and the cause is remanded with directions to the trial court as follows: (1) that judgment be entered against plaintiffs and in favor of defendant Gladys Hazell on plaintiffs' petition, (2) that defendant Gladys be given leave to amend the counterclaim in order to appropriately show her substitution for deceased defendant Laurence; (3) that a decree be entered on Count I of the counterclaim quieting title in Gladys Hazell to so much of the land in question as indicated by the views heretofore expressed; (4) that judgment for plaintiffs be entered on Count II of the counterclaim; and (5) that since Count II was, for all practical purposes, abandoned and was not involved in the trial or appeal, all costs be assessed against plaintiffs.

All concur.